1   JAMES M. FINBERG (SBN 114850)
    EVE H. CERVANTEZ (SBN 164709)
2   LINDA LYE (SBN 215584)
    JENNIFER SUNG (SBN 254741)
3   ALTSHULER BERZON LLP
    177 Post Street, Suite 300
4   San Francisco, California 94108
    Telephone: (415) 421-7151
5   Facsimile: (415) 362-8064
    E-Mail: jfinberg@altshulerberzon.com
6   E-Mail: ecervantez@altshulerberzon.com
    E-Mail: llye@altshulerberzon.com
7   E-Mail: jsung@altshulerberon.com

8   *Attorneys for Plaintiffs David Martin,*
    *Perry Dean, Donald Alexander,*
9   *Anthony Silva, and the proposed Plaintiff Class*

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12           SAN FRANCISCO/OAKLAND DIVISION

13

14  DAVID MARTIN, PERRY DEAN,          )    **Case No. C07-03887 PJH**
    DONALD ALEXANDER, AND              )
    ANTHONY SILVA, on behalf of        )    **FIRST AMENDED COMPLAINT FOR**
15  themselves and a class of those similarly )  **VIOLATIONS OF FAIR LABOR**
    situated,                          )    **STANDARDS ACT; THE CALIFORNIA**
16                                     )    **LABOR CODE; AND THE CALIFORNIA**
                                       )    **BUSINESS AND PROFESSIONS CODE**
17                  Plaintiffs,        )
                                       )
18           v.                        )    **COLLECTIVE ACTION AND CLASS**
                                       )    **ACTION**
19  NEW UNITED MOTOR                   )
    MANUFACTURING, INC.,               )    **DEMAND FOR JURY TRIAL**
20                                     )
                    Defendant.         )
21                                     )
    _____ )
22

23

24

25

26

27

28

1  Plaintiffs David Martin, Perry Dean, Donald Alexander, and Anthony Silva allege as follows:

2  **INTRODUCTION**

3        1.      This is a class and representative action against defendant New United Motor

4  Manufacturing, Inc. (hereafter "NUMMI" or "Defendant") for violations of the Fair Labor Standards

5  Act (hereafter "FLSA"), 29 U.S.C. §201 *et seq.*, the California Labor Code and Wage Orders, and

6  California Business & Professions Code §17200 *et seq.*

7        2.      Defendant manufactures vehicles in Fremont, California.  This action alleges that

8  Defendant maintains an unlawful policy of not compensating its production and maintenance

9  employees who work in Defendant's truck paint and passenger paint departments, in the paint side

10  of the plastics department, and in the body shop department's ELPO teams and its repair teams that

11  work in the paint shop ("ELPO and Repair Teams"), for work performed before the beginning and

12  after the end of the employees' scheduled shifts, specifically during the pre-shift period when these

13  employees must retrieve required clean-room coveralls (also known as "electrostatic coveralls"),

14  don the clean-room coveralls and other required personal protective equipment ("PPE"), and walk

15  through an air shower to their respective work areas; and during the post-shift period when these

16  employees must walk from their work area to their locker room, doff their clean-room coveralls and

17  other PPE, and deposit the clean-room coveralls.  Defendant requires these employees to wear the

18  clean-room coveralls, which serve multiple purposes, including but not limited to the protection of

19  employees from skin exposure to hazardous substances and other industrial hazards and the

20  prevention of contamination of the "clean room" environment in which Defendant manufactures

21  vehicles.  This action further alleges that Defendant maintains an unlawful policy of not

22  compensating at the legally required rate employees who work in paint booths in these departments

23  for minimum wage and overtime compensation due to them because of work performed during meal

24  and break periods, specifically, when these employees don and doff additional paint-booth specific

25  personal protective equipment, including respirators, two pairs of gloves, spray boots, and hoods.

26        3.      Through their class-wide claims, Plaintiffs seek compensation at the legally required

27  rate for all uncompensated work; all penalties, liquidated damages, and other damages permitted by

28  law; restitution of all benefits obtained by Defendant from its unlawful business practices;

1    injunctive and declaratory relief; all other forms of equitable relief permitted by law; and reasonable

2    attorneys' fees and costs.

3                                **JURISDICTION AND VENUE**

4        4.        This Court has subject matter jurisdiction under 29 U.S.C. §216(b) and 28 U.S.C.

5    §1331 because plaintiffs allege violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

6    §201 *et seq.* This Court has supplemental jurisdiction over all other claims under 28 U.S.C. §1367

7    because they form part of the same case or controversy as the federal FLSA claim.

8        5.        This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

9    §§2201 and 2202.

10       6.        The Northern District of California has personal jurisdiction over Defendant

11   NUMMI because Defendant has qualified with the California Secretary of State to do business and

12   is doing business in California and in this District, and because the acts complained of occurred in

13   this State and this District.

14       7.        Venue is proper in this district pursuant to 28 U.S.C. §§1391(b)(2) & (c) because a

15   substantial part of the events giving rise to the claims described herein occurred in this District and

16   Defendant may be found within this district.

17       8.        Pursuant to N.D. Cal. Local Rule 3-2(c) and (d), intra-district assignment to the San

18   Francisco/Oakland Division is proper because a substantial part of the events giving rise to claims

19   presented in this Complaint occurred in Alameda County.

20                                     **THE PARTIES**

21       9.        Plaintiff David Martin is employed by NUMMI as a maintenance employee in

22   NUMMI's passenger paint department. He has been employed by NUMMI since approximately

23   1985. He is a resident of San Leandro, California.

24       10.       Plaintiff Perry Dean is employed by NUMMI as a production employee in the

25   "ELPO" group of NUMMI's passenger paint department. He has been employed by NUMMI since

26   approximately 1988. He is a resident of Tracy, California.

27

28

1    11.    Plaintiff Donald Alexander is employed by NUMMI as a production employee in the

2  "prime" group of NUMMI's passenger paint department.  He has been employed by NUMMI since

3  approximately 2002.  He is a resident of Tracy, California.

4    12.    Plaintiff Anthony Silva is employed by NUMMI as a production employee in the "91

5  line" group of NUMMI's truck paint department.  He has been employed by NUMMI since

6  approximately 1992.  He is a resident of Tracy, California.

7    13.    Each of the Plaintiffs identified in paragraphs 9-12 hereby consent to sue for

8  violations of the FLSA, pursuant to 29 U.S.C. §§216(b) and 256.  The Plaintiffs' Consent to Sue

9  forms were filed on July 30, 2007 as Exhibits A through E to the Complaint.  Additional Plaintiffs

10  will be signing Consent to Sue forms and will be joining as Plaintiffs on this claim in the future.

11    14.    Defendant NUMMI is a California corporation that manufactures vehicles in

12  Fremont, California.  NUMMI employs approximately 5,000 production and maintenance

13  employees at its Fremont facility, including in excess of 205 production and maintenance employees

14  in its truck paint and passenger paint departments, in the paint side of its plastics department, and in

15  its body shop department's ELPO and Repair Teams.

16                        **COMMON FACTUAL ALLEGATIONS**

17  **A.    Work Performed During Pre-Shift Donning and Post-Shift Doffing Periods**

18    15.    NUMMI maintains a policy of requiring its production and maintenance employees

19  in its truck paint and passenger paint departments, in the paint side of its plastics department, and in

20  its body shop department's ELPO and Repair Teams ("Affected Departments"), to don and doff

21  personal protective equipment, including NUMMI-provided clean-room coveralls, prior to the start

22  of their shifts (except as noted in paragraph 20) and, generally, after the end of their shifts ("PPE

23  policy").  NUMMI's PPE policy is described in further detail in paragraphs 16 through 20  below.

24    16.    NUMMI assigns each production and maintenance employee in the Affected

25  Departments a coverall locker.  Prior to the start of each shift, NUMMI requires each employee in

26  the Affected Departments to retrieve a clean, packaged clean-room coverall from the employee's

27  assigned coverall locker, to walk to a second assigned locker, to open the coverall packaging, to

28  change into the clean-room coveralls, to don other PPE required in the employee's specific work

FIRST AMENDED COMPLAINT FOR VIOLATIONS OF FAIR LABOR STANDARDS ACT; THE CALIFORNIA
LABOR CODE; AND THE CALIFORNIA BUSINESS AND PROFESSIONS CODE, Case No. C07-03887 PJH    3

1   area, to walk through an air shower, and then to proceed either to the employee's work area or the

2   designated meeting location for the employee's "team meeting." NUMMI requires production and

3   maintenance employees in the Affected Departments to be in their respective work areas or in the

4   designated location for the their team meeting at the start of each shift. NUMMI further requires

5   production and maintenance employees in the Affected Departments to be dressed in their NUMMI-

6   provided clean-room coveralls when they report to their respective work areas or team meetings at

7   the start of their shifts. NUMMI reprimands and/or disciplines production and maintenance

8   employees who are not present on time and dressed in their NUMMI-provided clean-room coveralls

9   when they report to their respective work areas or team meetings at the start of their shifts. NUMMI

10  prohibits production and maintenance employees from donning their NUMMI-provided clean-room

11  coveralls at home and requires them to don the clean-room coveralls in the plant.

12      17.     NUMMI requires all production and maintenance employees in the Affected

13  Departments, after the end of their shifts, to walk from their specific work area to their locker room,

14  remove their PPE, including their clean-room coveralls, and deposit their dirty clean-room coveralls

15  in their assigned coverall locker so that NUMMI can have the clean-room coveralls professionally

16  cleaned. NUMMI prohibits production and maintenance employees from taking their clean-room

17  coveralls home and NUMMI reprimands and/or disciplines production and maintenance employees

18  who do not deposit their dirty clean-room coveralls in their assigned coverall locker after the end of

19  each shift.

20      18.     The purposes of the PPE policy include, but are not limited to, protection of

21  employees from skin exposure to hazardous substances and other industrial hazards and prevention

22  of the entry of contaminants into the clean room environment of the Affected Departments at

23  NUMMI, and thus to ensure quality control of the vehicles manufactured by NUMMI.

24      19.     The first principal activity performed by Plaintiffs and class members each day is the

25  donning of PPE, which commences with the retrieval of clean-room coveralls from each employee's

26  assigned coverall locker. The last principal activity performed by Plaintiffs and class members each

27  day is the doffing of PPE, which ends with the deposit of dirty clean-room coveralls in each

28  employee's assigned coverall locker. The donning and doffing of the clean-room coveralls are

1  integral and indispensable parts of these employees' jobs because the clean-room coveralls are

2  personal protective equipment that protect employees from workplace hazards and ensure quality

3  control of the vehicles manufactured by NUMMI.  Specifically, the clean-room coveralls function as

4  a barrier that prevents skin exposure to hazardous substances while also preventing dust, lint, or

5  other foreign materials from contaminating the clean room environment in which the employees in

6  the Affected Departments work.

7        20.    On information and belief, on or about one year ago in the paint side of the plastics

8  department, the PPE policy was changed to permit employees in that department to don their PPE,

9  including their clean-room coveralls, after their team meeting.  For the period following this change

10  in policy, to the extent it has actually been applied, the plastics department employees' first

11  principal activity has been their team meeting.

12        21.    It takes approximately 6 to 12 minutes from the time an employee retrieves a clean

13  pair of clean-room coveralls from his or her assigned coverall locker until the employee arrives at

14  his or her work area or designated meeting location for the employee's team meeting ("Pre-Shift

15  Donning Period").  Plaintiffs and the class members consistently work or worked 6 to 12 minutes

16  before their scheduled shifts during this Pre-Shift Donning Period.  NUMMI suffers and/or permits

17  its employees in the Affected Departments to work for 6 to 12 minutes per day during these Pre-

18  Shift Donning Periods.

19        22.    It takes approximately 6 to 12 minutes from the time an employee leaves his or her

20  work area until an employee deposits his or her dirty clean-room coveralls in his or her assigned

21  coverall locker ("Post-Shift Doffing Period").  With few exceptions, Plaintiffs and the class

22  members consistently work or worked 6 to 12 minutes after their scheduled shifts during this Post-

23  Shift Doffing Period.  NUMMI suffers and/or permits its employees in the Affected Departments to

24  work for 6 to 12 minutes per day during these Post-Shift Doffing Periods.

25        23.    When Plaintiffs begin the Pre-Shift Donning Period prior to the start of the scheduled

26  shift and/or complete the Post-Shift Doffing Period after the end of their scheduled shift, NUMMI

27  has not and does not compensate Plaintiffs or the class members for the work they perform prior to

28  the start and/or after the end of their scheduled shift, in violation of law.  Nor does the time spent by

1  Plaintiffs and the class members performing work prior to the start and/or after the end of their

2  scheduled shift appear on their wage statements.

3      24.    Plaintiffs all work or worked for NUMMI five to seven shifts per week, with each

4  shift consisting of at least eight hours per day. Due to NUMMI's policy and practice of requiring

5  Plaintiffs to don and doff PPE, including clean-room coveralls, prior to the start and after the end of

6  each shift, Plaintiffs work or worked hours in excess of forty (40) hours per week and in excess of

7  eight (8) hours per day. NUMMI has not and does not pay Plaintiffs overtime compensation for this

8  work, in violation of California and federal law.

9  **B.    Work Performed By Employees Who Work In Paint Booths During Meal and Break**

10     **Periods**

11     25.    All employees at NUMMI are entitled pursuant to state law to one 30-minute meal

12 period per shift. NUMMI does not count the 30-minute meal period as "hours worked" in

13 computing whether employees have worked in excess of 8 hours in one day or 40 hours in one

14 week.

15     26.    All employees at NUMMI are entitled pursuant to state law to two, 10-minute, paid

16 rest periods per 8-hour shift.

17     27.    NUMMI generally provides employees with one 15-minute rest period and one

18 combined, 45-minute meal and rest period per 8-hour shift.

19     28.    Certain employees who work in the Affected Departments, including Plaintiff

20 Donald Alexander, work in paint booths. NUMMI requires employees who work in paint booths to

21 wear additional, paint-booth specific personal protective equipment – including respirators, spray

22 boots, hoods, and two sets of gloves – that it does not require other employees who work in these

23 departments to wear. The donning and doffing of the paint-booth specific PPE is integral and

24 indispensable to the job performed by paint-booth employees because the equipment protects these

25 employees from exposure to workplace hazards and enables them to perform the task of spraying

26 paint or other substances on vehicles.

27     29.    Employees who work in paint booths commence their meal or rest period when they

28 have finished spraying the last vehicle that travels along the production line through the paint booth.

1    At the beginning of a meal or rest period, employees who work in paint booths must proceed out of

2    the booth; place shoe covers over their boots so they do not track paint on the shop floor; walk to the

3    spray-locker area; remove their respirators, hoods, and gloves; change out of spray boots and into

4    safety shoes; clean their respirators, face, and hands to remove paint or other substances; and place

5    their paint-booth specific PPE in their lockers.  This doffing process takes approximately 2.5

6    minutes, and with few exceptions occurs during the employees' meal and rest periods.  NUMMI

7    suffers and/or permits paint-booth employees to work during their meal and rest periods, when these

8    employees doff paint-booth specific PPE.

9         30.    NUMMI requires employees who work in paint booths to be present in the paint

10    booth, wearing all paint-booth specific PPE, at the end of their meal and rest periods, and be ready

11    to commence spraying vehicles at that time.  NUMMI reprimands and/or disciplines employees who

12    work in paint booths and who are not dressed in their paint-booth specific PPE and ready to paint at

13    the end of their meal or rest period.  Specifically, these employees must return to the spray-locker

14    area, change from safety shoes to spray boots; clean their respirators (if not cleaned at start of

15    break); don their respirators, hood, and two pairs of gloves; and enter the spray booth.  This donning

16    process takes approximately 2.5 minutes, and with few exceptions occurs during the employees'

17    meal and rest periods.  NUMMI suffers and/or permits paint-booth employees to work during their

18    meal and rest periods, when these employees don paint-booth specific PPE.

19         31.    Time spent donning and doffing paint-booth specific PPE during meal and rest

20    periods by Plaintiff Alexander and class members who work in paint booths does not appear on

21    these employees' wage statements.

22         32.    Plaintiff Alexander and class members who work in paint booths all work or worked

23    for NUMMI five to seven shifts per week, with each shift consisting of at least eight hours per day.

24    Due to NUMMI's policy and practice of requiring Plaintiff Alexander and class members who work

25    in paint booths to don and doff paint-booth specific PPE during meal and/or rest periods, these

26    employees work or worked hours in excess of forty (40) hours per week and in excess of eight (8)

27    hours per day.  When Plaintiff Alexander and class members who work in paint booths don and doff

28

1   paint-booth specific PPE during meal and/or rest periods, NUMMI has not and does not pay

2   overtime compensation for this work, in violation of California and federal law.

3                         **COLLECTIVE ACTION ALLEGATIONS**

4         33.    Plaintiffs bring the First Claim for Relief for violation of the FLSA as a collective

5   action pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), on behalf of all persons who were,

6   are, or will be employed by Defendant as production or maintenance employees in the Affected

7   Departments at Defendant's manufacturing facility in Fremont, California, at any time between July

8   30, 2004 and the present who have not been compensated at one and one-half times the regular rate

9   of pay for all work performed during Pre-Shift Donning and Post-Shift Doffing Periods, and/or

10  performed during meal and rest periods when donning and doffing paint-booth specific PPE, that is

11  in excess of forty (40) hours per work week.

12        34.    The First Claim for Relief for violations of the FLSA may be brought and maintained

13  as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b), as

14  prospective members of the FLSA Collective Action are similarly situated to Plaintiffs and have

15  claims that are similar to Plaintiffs' First Claim for Relief.

16        35.    Questions of law and fact common to the collective action as a whole include, but are

17  not limited to, the following:

18        a.     Whether NUMMI unlawfully failed and continues to fail to compensate Plaintiffs

19               and FLSA Collective Action Plaintiffs for overtime hours worked during Pre-Shift

20               Donning and Post-Shift Doffing Periods, in violation of the FLSA, 29 U.S.C. §201 *et*

21               *seq.*;

22        b.     Whether NUMMI unlawfully failed and continues to fail to compensate Plaintiff

23               Alexander and FLSA Collective Action Plaintiffs who work in paint booths for

24               overtime hours worked during meal and rest periods when they don and doff paint-

25               booth specific PPE, in violation of the FLSA, 29 U.S.C. §201 *et seq.*;

26        c.     Whether NUMMI's failure to pay overtime to Plaintiffs and the FLSA Collective

27               Action Plaintiffs was willful within the meaning of the FLSA;

28

1       d.     Whether NUMMI failed and continues to fail to maintain accurate records of actual

2               time worked by Plaintiffs and the FLSA Collective Action Plaintiffs;

3       e.     Whether NUMMI failed and continues to fail to record or report all actual time

4               worked by Plaintiffs and the FLSA Collective Action Plaintiffs; and

5       f.     Whether NUMMI failed and continues to fail to provide accurate wage statements

6               itemizing all actual time worked and wages earned by Plaintiffs and the FLSA

7               Collective Action Plaintiffs.

8       36.    Plaintiffs and the FLSA Collective Action Plaintiffs are similarly situated and are

9 subject to NUMMI's common practice, policy or plan of refusing to pay overtime in violation of the

10 FLSA.

11       37.    The names and addresses of the FLSA Collective Action Plaintiffs are available from

12 Defendant, and notice should be provided to the FLSA Collective Action Plaintiffs *via* first class

13 mail to their last known address as soon as possible. Notice should also be provided to the FLSA

14 Collective Action Plaintiffs *via* postings in each team room or break room made available for use by

15 production and maintenance employees in the Affected Departments.

16                        **CALIFORNIA CLASS ACTION ALLEGATIONS**

17       38.    Plaintiffs bring the Second, Third, Fourth, and Fifth Claims for Relief for violation of

18 California's wage and hour laws as a class action, pursuant to Fed. R. Civ. P. 23 (a), (b)(2), and

19 (b)(3), on behalf of themselves and the following Plaintiff Class:

20               All persons who are and/or were employed by New United Motor
               Manufacturing, Inc., as a production or maintenance employee in

21               NUMMI's truck paint department, passenger paint department, paint
               side of its plastics department, and/or body shop department's ELPO

22               and Repair Teams, at its Fremont, California manufacturing facility at
               any time between July 30, 2003 and the present.

23

24 All Plaintiffs are members of the Plaintiff Class on whose behalf the Second, Third, Fourth, and

25 Fifth Claims for Relief are brought.

26       39.    Plaintiff Donald Alexander brings the Second, Third, Fourth, and Fifth Claims for

27 Relief for violation of California's wage and hour laws as a class action, pursuant to Fed. R. Civ. P.

28 23 (a), (b)(2), and (b)(3), on behalf of himself and the following Plaintiff Subclass:

> All persons who are and/or were employed by New United Motor
> Manufacturing, Inc., as a production or maintenance employee in
> NUMMI's truck paint department, passenger paint department, paint
> side of its plastics department, and/or body shop department's ELPO
> or Repair Teams, at its Fremont, California manufacturing facility,
> and who worked in a paint booth, at any time between July 30, 2003
> and the present.

Plaintiff Alexander is a member of the Plaintiff Subclass on whose behalf the Second, Third,

Fourth, and Fifth Claims for Relief are brought.

40.     The Plaintiff Class and Subclass are each so numerous that joinder of all members is

impracticable.  Plaintiffs are informed and believe, and on that basis allege, that in excess of 205

persons have been employed by Defendant as production or maintenance employees in the Affected

Departments at NUMMI's Fremont, California manufacturing facility during the class period, and

that given turnover, the Plaintiff Class is more numerous than that.  Although the exact number and

identities of class members are unknown to Plaintiffs at this time, this information is readily

ascertainable from Defendant through discovery of its payroll and personnel records.

41.     Common questions of law and fact predominate over any questions affecting

individual class members.  Questions of law and fact common to members of the Plaintiff Class as a

whole include, but are not limited to, the following:

a.     Whether Defendant maintains a policy and practice of suffering and/or permitting its

production and maintenance employees in its truck paint and passenger paint

departments, the paint side of its plastics department, and its body shop department's

ELPO and Repair Teams, to work during Pre-Shift Donning Periods, which

commence when these employees retrieve their NUMMI-provided clean-room

coveralls from their assigned coverall lockers;

b.     Whether Defendant failed to compensate class members for hours worked prior to

the start of their scheduled shifts during Pre-Shift Donning Periods, which

commence when these employees retrieve their NUMMI-provided clean-room

coveralls from their assigned coverall lockers;

c.     Whether Defendant maintains a policy and practice of suffering and/or permitting its

production and maintenance employees in its truck paint and passenger paint

1    departments, in the paint side of its plastics department, and its body shop

2    department's ELPO and Repair Teams, to work during Post-Shift Doffing Periods,

3    which end when these employees deposit their NUMMI-provided clean-room

4    coveralls in their assigned coverall lockers;

5    d.    Whether Defendant failed to compensate class members for hours worked after the

6    end of their scheduled shifts during Post-Shift Doffing Periods, which end when

7    these employees deposit their NUMMI-provided dirty clean-room coveralls in their

8    assigned coverall lockers;

9    e.    Whether Defendant maintains a policy and practice of suffering and/or permitting its

10    production and maintenance employees who work in paint booths in NUMMI's truck

11    paint and passenger paint departments, the paint side of its plastics department, and

12    its body shop department's ELPO and Repair Teams, to work during meal and/or rest

13    periods when these employees don and doff paint-booth specific PPE;

14    f.    Whether Defendant failed to pay class members overtime compensation in violation

15    of the California Labor Code and related regulations;

16    g.    Whether Defendant failed to pay class members the minimum wage for all hours

17    worked, as required by the California Labor Code and related regulations;

18    h.    Whether Defendant failed to pay class members the full amount of wages required by

19    California law for all hours worked when due as required by the California Labor

20    Code and related regulations;

21    i.    Whether Defendant unlawfully failed to keep and furnish class members with

22    accurate records of hours worked, in violation of the California Labor Code and

23    related regulations;

24    j.    Whether Defendant's policy and practice of failing to pay its employees all wages

25    due within the time required by law after their employment ended violates California

26    law;

27    k.    Whether Defendant's conduct violated the California Unfair Competition Law, Cal.

28    Bus. & Prof. Code §17200 *et seq.*, as alleged in this Complaint.

42.    Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class. Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation. Plaintiffs' interests are co-extensive with those of class members, and are not antagonistic to them.

43.    Plaintiffs' claims are typical of class members' claims. Plaintiffs, like other class members, were subjected to Defendant's policies and practices of refusing to compensate production and maintenance employees in the Affected Departments for work performed prior to the start of their scheduled shifts during Pre-Shift Donning Periods; refusing to compensate production and maintenance employees in the Affected Departments for work performed after the end of their scheduled shift during Post-Shift Doffing Periods; and refusing to compensate at the legally required rate production and maintenance employees who work in paint booths in the Affected Departments for time spent during meal and rest periods donning and doffing paint-booth specific PPE. Plaintiffs' job duties are typical of those of other class members.

44.    Class certification of the Second, Third, Fourth, and Fifth Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Plaintiff Class as a whole. Plaintiffs and the Plaintiff Class are entitled to injunctive relief to end Defendant's common and uniform practice of failing to properly compensate Plaintiffs and the Plaintiff Class for all overtime work performed for the benefit of Defendant and failing properly to compensate Plaintiffs and the Plaintiff Class for all hours worked.

45.    Class certification of the Second, Third, Fourth, and Fifth Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Plaintiff Class predominate over any questions affecting only individual members of the Plaintiff Class, and because the class action device is superior to other available methods for the fair and efficient adjudication of this litigation. Defendant's common and uniform policies and practices unlawfully deny Plaintiffs and the class members their earned wages, including overtime wages. The damages suffered by individual class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will

1  obviate the need for unduly duplicative litigation that might result in inconsistent judgments about

2  Defendant's practices.

3                              **FIRST CLAIM FOR RELIEF**

4                    (Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*,

5  Brought by Plaintiffs on Behalf of Themselves and all FLSA Collective Action Plaintiffs For

6                        Failure to Pay Overtime Premiums)

7        46.     Plaintiffs, on behalf of themselves and all FLSA Collective Action Plaintiffs, reallege

8  and incorporate by reference paragraphs 1 through 45 as if they were set forth again herein.

9        47.     At all relevant times, Defendant has been, and continues to be, an "employer"

10  engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the

11  meaning of the FLSA, 29 U.S.C. §203.  At all relevant times, Defendant has employed and/or

12  continues to employ "employee[s]," including Plaintiffs and each of the prospective FLSA

13  Collective Action Plaintiffs, who have been and/or continue to be engaged in interstate "commerce"

14  and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C.

15  §203.  At all relevant times, Defendant has had gross operating revenues in excess of $500,000.

16        48.     Plaintiffs in this action have signed Consent to Sue forms pursuant to Section 16(b)

17  of the FLSA, 29 U.S.C. §§216(b) and 256.  Other individuals will sign consent forms and join as

18  plaintiffs on this claim in the future.

19        49.     The FLSA requires Defendant, as a covered employer, to compensate all non-exempt

20  employees at a rate of not less than one and one-half times their regular rate of pay for work

21  performed in excess of forty (40) hours in a work week.

22        50.     Plaintiffs and all FLSA Collective Action Plaintiffs are non-exempt employees

23  entitled to be paid overtime compensation for all overtime hours worked.

24        51.     At all relevant times, Defendant, pursuant to its policies and practices, failed and

25  refused to pay overtime premiums to Plaintiffs and the FLSA Collective Action Plaintiffs for their

26  hours worked in excess of 40 hours per week for work regularly performed "off-the-clock" during

27  Pre-Shift Donning Periods, commencing with the retrieval of NUMMI-provided clean-room

28  coveralls.

52.     At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay overtime premiums to Plaintiffs and the FLSA Collective Action Plaintiffs for their hours worked in excess of 40 hours per week for work regularly performed "off-the-clock" during Post-Shift Doffing Periods, ending with the depositing of NUMMI-provided clean-room coveralls in a coverall locker .

53.     At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay overtime premiums to Plaintiff Alexander and the FLSA Collective Action Plaintiffs who work in paint booths for their hours worked in excess of 40 hours per week for work regularly performed during meal and rest periods when they don and doff paint-booth specific PPE.

54.     At all relevant times, Defendant has engaged, and continues to engage, in a willful policy, pattern, or practice of requiring or permitting its non-exempt hourly employees, including Plaintiffs and the FLSA Collective Action Plaintiffs, to perform work "off-the-clock" during Pre-Shift Donning Periods and Post-Shift Doffing Periods, without paying overtime premiums to such employees for all such overtime work performed.

55.     At all relevant times, Defendant has engaged, and continues to engage, in a willful policy, pattern, or practice of requiring or permitting its non-exempt hourly employees, including Plaintiff Alexander and the FLSA Collective Action Plaintiffs who work in paint booths to perform work during meal and rest periods, when they don and doff paint-booth specific PPE, without paying legally mandated overtime premiums.

56.     At all relevant times, the uncompensated work performed by Defendant's non-exempt hourly employees, including Plaintiffs and the FLSA Collective Action Plaintiffs, was and continues to be required or permitted by Defendant, for the benefit of Defendant, and is directly related to such employees' principal employment with Defendant, and is an integral and indispensable part of such employees' employment with Defendant.

57.     Plaintiffs and the FLSA Collective Action Plaintiffs were "employees" within the meaning of the FLSA because the work performed during these periods was and is required by Defendant, for the immediate benefit of Defendant, and is directly related to and specific to the employees' employment with Defendant.

1    58.    Defendant violated and continues to violate the FLSA, 29 U.S.C. §201 *et seq.*,

2    including 29 U.S.C. §§207(a)(1) and 215(a), by failing to pay Plaintiffs and the FLSA Collective

3    Action Plaintiffs at least one-and-a-half times their regular rates of pay for all hours worked in

4    excess of forty (40) in a workweek.  These violations of the FLSA were knowing and willful within

5    the meaning of 29 U.S.C. §201 *et seq.*

6    59.    The FLSA also imposes specific employment record-keeping requirements, including

7    the obligation to keep accurate records of all hours worked.  By failing to record, report, and/or

8    preserve records of all hours worked by Plaintiffs and the FLSA Collective Action Plaintiffs,

9    Defendant has failed to make, keep, and preserve records with respect to each of its employees

10    sufficient to determine their wages, hours, and other conditions and practice of employment, in

11    violation of the FLSA, 29 U.S.C. §201 *et seq.*, including 29 U.S.C. §§211(c) and 215(a).  These

12    violations of the FLSA were knowing and willful within the meaning of 29 U.S.C. §201 *et seq.*

13    60.    As a result of Defendant's violations of law, FLSA Collective Action Plaintiffs are

14    entitled to recover from Defendant the amount of their unpaid overtime compensation, an additional

15    equal amount as liquidated damages, as provided by the FLSA, 29 U.S.C. §216(b), prejudgment

16    interest, attorneys' fees, litigation expenses and court costs, pursuant to 29 U.S.C. §216(b), and such

17    other legal and equitable relief as the Court deems just and proper.

18                                **SECOND CLAIM FOR RELIEF**

19                    (Cal. Wage Order No. 1; Cal. Labor Code §§510, 1194, 1198

20    Brought By Plaintiffs On Behalf Of Themselves And The Class For Failure To Pay Overtime

21                                        Premiums)

22    61.    Plaintiffs, on behalf of themselves and all members of the Class, reallege and

23    incorporate by reference paragraphs 1 through 60 as if they were set forth again herein.

24    62.    California law, including Wage Order 1 of the California Industrial Welfare

25    Commission (hereafter "Wage Order"), and California Labor Code §§510, 1194, and 1198 requires

26    Defendant to pay overtime compensation to all non-exempt employees for all hours worked over

27    forty (40) per week, or over eight per day.

28

1    63.    Plaintiffs and the class members are non-exempt employees entitled to be paid

2  overtime compensation for all overtime hours worked.

3    64.    Throughout the period from July 30, 2003 to the present (the "Class Period"),

4  Defendant has refused to pay Plaintiffs and the class members overtime premium pay for their

5  overtime hours worked as a result of work performed during Pre-Shift Donning and Post-Shift

6  Doffing Periods.

7    65.    Throughout the Class Period, Defendant has refused to pay Plaintiff Alexander and

8  subclass members who worked in paint booths overtime premium pay for their overtime hours

9  worked as a result of work performed during meal and rest periods, when donning and doffing of

10  paint-booth specific PPE.

11    66.    Pursuant to Labor Code §1194, Plaintiffs and class members are entitled to recover

12  from Defendant all unpaid overtime compensation to which they are entitled, plus pre- and post-

13  judgment interest thereon and reasonable attorneys' fees and costs incurred in prosecuting this

14  action.

15    67.    Many class members are no longer working for Defendant.  By failing to compensate

16  class members as required by California law at any time between July 30, 2003 and July 30, 2007,

17  Defendant also has willfully failed to make timely payment of the full wages due to its employees

18  who quit or have been discharged, and thereby has violated Labor Code §201.

19    68.    Pursuant to Labor Code §203, those class members whose employment with

20  Defendant has terminated are also entitled to recover waiting time penalties.

21    69.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein,

22  Plaintiffs and the members of the Plaintiff Class have sustained damages, including loss of earnings

23  for overtime hours worked on behalf of Defendant in an amount to be established at trial,

24  prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

25  **THIRD CLAIM FOR RELIEF**

26  (Cal. Wage Order No. 1; Cal. Labor Code §1194, 1194.2, 1197

27  Brought By Plaintiffs On Behalf Of Themselves And The Class For Failure To Pay Minimum

28  Wages)

70.    Plaintiffs, on behalf of themselves and all members of the Class, reallege and incorporate by reference paragraphs 1 through 69 as if they were set forth again herein.

71.    California law, including Wage Order 1 of the California Industrial Welfare Commission (hereafter "Wage Order"), and California Labor Code §§1194 and 1197 requires Defendant to pay all non-exempt employees not less than the minimum wage for all hours worked.

72.    Plaintiffs and the class members are non-exempt employees entitled to be paid the minimum wage for all hours worked.

73.    Throughout the Class Period, Defendant has refused to pay Plaintiffs and class members the minimum wage for all hours worked as a result of work performed during Pre-Shift Donning and Post-Shift Doffing Periods.

74.    Pursuant to Labor Code §1194, Plaintiffs and class members are entitled to recover from Defendant all unpaid minimum wages to which they are entitled, plus pre- and post-judgment interest thereon and reasonable attorneys' fees and costs incurred in prosecuting this action.

75.    Pursuant to Labor Code §1194.2, Plaintiffs and class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

76.    Many class members are no longer working for Defendant.  By failing to compensate class members as required by California law at any time between July 30, 2003 and July 30, 2007, Defendant also has willfully failed to make timely payment of the full wages due to its employees who quit or have been discharged, and thereby has violated Labor Code §201.

77.    Pursuant to Labor Code §203, those class members whose employment with Defendant has terminated are also entitled to recover waiting time penalties.

78.    As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Plaintiffs and the members of the Plaintiff Class have sustained damages, including loss of earnings for hours worked on behalf of Defendant in an amount to be established at trial, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

## FOURTH CLAIM FOR RELIEF

(Cal. Labor Code §§226, 1174, 1174.5, Cal Wage Order No. 1,

1  Brought By Plaintiffs On Behalf Of Themselves And The Class For Failure To Comply With

2  Record-Keeping Requirements)

3      79.    Plaintiffs, on behalf of themselves and all members of the Class, reallege and

4  incorporate by reference paragraphs 1 through 78 as if they were set forth again herein.

5      80.    Defendant knowingly and intentionally failed to provide timely, accurate, itemized

6  wage statements including, *inter alia*, hours worked, to Plaintiffs and the class members as required

7  by Labor Code §226(a) and the IWC Wage Order.  Such failure caused injury to Plaintiffs and the

8  class members, by, among other things, impeding them from knowing the amount of wages to

9  which they are and were entitled.  At all times relevant herein, Defendant has failed to maintain

10  records of hours worked by Plaintiff and the class members as required under Labor Code §1174(d).

11      81.    Plaintiffs and class members are entitled to and seek injunctive relief requiring

12  Defendant to comply with Labor Code §§226(a) and 1174(d), and further seek all actual and

13  statutory damages and penalties, and reasonable attorney's fees available for these violations under

14  Labor Code §§226(e) and 1174.5.

15  **FIFTH CLAIM FOR RELIEF**

16  (California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq.*,

17  Brought By Plaintiffs On Behalf Of Themselves And The Class)

18      82.    Plaintiffs, on behalf of themselves and all members of the Class, reallege and

19  incorporate by reference paragraphs 1 through 81 as if they were set forth again herein.

20      83.    The conduct of Defendant, as alleged herein, violates the California Unfair

21  Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200 *et seq.*

22      84.    Plaintiffs allege that the unfair and unlawful business practices complained of herein

23  are and were the regular business practice of Defendant.

24      85.    Through Defendant's failures to pay legally-required minimum and overtime wages

25  for all hours worked, to maintain and provide employees with accurate records of hours worked

26  with payments of wages, to pay wages when due, and other conduct alleged herein, Defendant has

27  violated numerous specific provisions of state and federal law and has engaged in, and continues to

28  engage in, unlawful and unfair business practices in violation of the UCL, depriving Plaintiffs and

1  all class members of rights, benefits, and privileges guaranteed to all employees under law, and has

2  caused Plaintiffs and all class members to suffer injury in fact and to lose money and/or property.

3      86.    Plaintiffs are informed and believe, and based upon such information and belief

4  allege, that by engaging in the unfair and unlawful business practices complained of herein,

5  Defendant was able to lower its labor costs and thereby to obtain a competitive advantage over law-

6  abiding employers with which it competes.

7      87.    The harm to Plaintiffs and the class members in being wrongfully denied lawfully

8  earned wages outweighs the utility, if any, of Defendant's policies or practices and, therefore,

9  Defendant's actions described herein constitute an unfair business practice or act within the

10  meaning of the UCL.

11      88.    Cal. Business and Professions Code §17203 provides that the Court may restore to an

12  aggrieved party any money or property acquired by means of unlawful and unfair business practices.

13  Under the circumstances alleged herein, it would be inequitable and result in a miscarriage of justice

14  for Defendant to continue to retain the property of Plaintiffs and the class members, entitling

15  Plaintiffs and the class members to restitution of the unfair benefits obtained.  Plaintiffs seek

16  restitution of all unpaid wages owing to them and to members of the class, according to proof, as

17  well as all other available equitable relief.

18      89.    Injunctive relief pursuant to Cal. Business and Professions Code §17203 is necessary

19  to prevent Defendant from continuing to engage in unfair business practices as alleged in this

20  Complaint.  Defendant and/or persons acting in concert with Defendant has done, is now doing, and

21  will continue to do or cause to be done, the illegal acts alleged in this Complaint, unless restrained

22  and enjoined by this Court.  Unless the relief prayed for below is granted, a multiplicity of actions

23  will result.  Plaintiffs have no plain, speedy, or adequate remedy at law, for reasons which include

24  but are not limited to the following: (a) it is difficult to measure the amount of monetary damages

25  that would compensate Plaintiffs for defendants' wrongful acts; and (b) in any event, pecuniary

26  compensation alone would not afford adequate and complete relief.  The continuing violation of law

27  by Defendant will cause great and irreparable damage to Plaintiffs and others similarly situated

28  unless Defendant is immediately restrained from committing further illegal acts.

90.    Plaintiffs herein take upon themselves enforcement of these laws and lawful claims. There is a financial burden incurred in pursuing this action. Therefore Plaintiffs, on behalf of themselves and the class members, seek recovery of attorneys' fees and costs of this action to be paid by Defendant, as provided by the UCL and California Labor Code §§218, and 1194, and C.C.P. §1021.5.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and all FLSA Collective Action Plaintiffs, pray for relief as follows:

A.    Designation of this action as a collective action on behalf of the FLSA Collective Action Plaintiffs (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of the FLSA Opt-In Class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. §216(b), and tolling of the statute of limitations on the claims of all members of the FLSA Opt-In Class from the date the original complaint was filed until the class members are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as plaintiffs;

B.    Designation of Representative Plaintiffs David Martin, Perry Dean, Donald Alexander, and Anthony Silva as representatives of the FLSA Collective Action Plaintiffs;

C.    A declaratory judgment that the practices complained of herein are unlawful under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*

D.    An award of damages, including unpaid overtime compensation and an additional equal amount as liquidated damages, to be paid by Defendant;

E.    Costs of action incurred herein, including reasonable attorneys' fees under, *inter alia,* 29 U.S.C. §216(b), litigation expenses and court costs;

F.    Pre-Judgment and post-Judgment interest, as provided by law; and

G.    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

1    WHEREFORE, Plaintiffs on behalf of themselves and all members of the Plaintiff Class,

2    additionally pray for relief as follows:

3    H.    Certification of this action as a class action on behalf of the proposed Plaintiff Class;

4    I.    Designation of Plaintiffs David Martin, Perry Dean, Donald Alexander, and Anthony

5    Silva as Representatives of the Plaintiff Class;

6    J.    Designation of Plaintiffs' counsel as Counsel for the Plaintiff Class;

7    K.    A declaratory judgment that the practices complained of herein are unlawful under

8    California state law;

9    L.    Appropriate equitable and injunctive relief to remedy Defendant's violations of

10   California law, including but not necessarily limited to an order enjoining Defendant from

11   continuing its unlawful practices;

12   M.    An award of damages, statutory penalties, and restitution to be paid by Defendant

13   according to proof;

14   N.    Pre-Judgment and Post-Judgment interest, as provided by law;

15   O.    Such other injunctive and equitable relief as the Court may deem just and proper; and

16   P.    Attorneys' fees and costs of suit, including expert fees and fees pursuant to Cal.

17   Labor Code §§218.5, and 1194, Cal. Code Civ. Proc. §1021.5, and other applicable state laws.

18   **DEMAND FOR JURY TRIAL**

19   Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which

20   they have a right to jury trial.

21   Date:    April 7, 2008          By: _____

22                                          James M. Finberg

23                                   JAMES M. FINBERG (SBN 114850)
                                     EVE H. CERVANTEZ (SBN 164709)
24                                   LINDA LYE (SBN 215584)
                                     JENNIFER SUNG (SBN 254741)
25                                   ALTSHULER BERZON LLP
                                     177 Post Street, Suite 300
26                                   San Francisco, California 94108
                                     Telephone: (415) 421-7151
27                                   Facsimile: (415) 362-8064
                                     E-Mail: jfinberg@altshulerberzon.com
28                                   E-Mail: ecervantez@altshulerberzon.com
                                     E-Mail: llye@altshulerberzon.com
                                     E-Mail: jsung@altshulerberonz.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Attorneys for Plaintiffs David Martin, Perry Dean, Donald Alexander, and Anthony Silva, and the proposed Plaintiff Class*