1  JAMES M. FINBERG (SBN 114850)
   EVE H. CERVANTEZ (SBN 164709)
2  LINDA LYE (SBN 215584)
   PEDER THOREEN (SBN 217081)
3  JENNIFER SUNG (SBN 254741)
   ALTSHULER BERZON LLP
4  177 Post Street, Suite 300
   San Francisco, CA 94108
5  Telephone: (415) 421-7151
   Facsimile: (415) 362-8064
6  E-Mail: jfinberg@altshulerberzon.com
   E-Mail: ecervantez@altshulerberzon.com
7  E-Mail: llye@altshulerberzon.com
   E-Mail: pthoreen@altshulerberzon.com
8  E-Mail: jsung@altshulerberzon.com

9  *Attorneys for Plaintiffs David Martin,*
   *Perry Dean, Donald Alexander,*
10 *Anthony Silva, and the proposed Plaintiff Class*

11

12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO/OAKLAND DIVISION

15

16  DAVID MARTIN, PERRY DEAN,        **Case No. C07-03887 PJH**
    DONALD ALEXANDER, AND
17  ANTHONY SILVA, on behalf of      **NOTICE OF MOTION AND MOTION FOR**
    themselves and a class of those  **ORDER (1) CONDITIONALLY CERTIFYING**
18  similarly situated,              **SETTLEMENT CLASS AND COLLECTIVE**
                                     **ACTION; (2) GRANTING PRELIMINARY**
19              Plaintiffs,          **APPROVAL TO PROPOSED CLASS ACTION**
                                     **SETTLEMENT AND PLAN OF ALLOCATION;**
20      v.                           **(3) DIRECTING DISSEMINATION OF CLASS**
                                     **NOTICE AND SETTLEMENT FORMS TO**
21                                   **CLASS; AND (4) SETTING FINAL APPROVAL**
    NEW UNITED MOTOR                 **HEARING DATE AND RELATED DATES;**
22  MANUFACTURING, INC.,             **MEMORANDUM IN SUPPORT OF MOTION**

23                                   Date:      July 30, 2008
                Defendant.           Time:      9:00 a.m.
24                                   Courtroom: 3
                                     Judge:     Hon. Phyllis J. Hamilton
25

26

27

28

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 30, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 of this Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, plaintiffs David Martin, *et al.*, will, and hereby do, move this Court for the following relief with respect to the Joint Stipulation of Class Settlement, Settlement Agreement, and Release (the "Settlement") entered into by plaintiffs and defendant, New United Motor Manufacturing, Inc. ("NUMMI"):

1.  that the Court certify for settlement purposes only the following settlement class (the "Class") pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

> All persons who perform or performed work in a cleanroom environment while employed by NUMMI as a production or maintenance employee in NUMMI's truck paint department, passenger paint department, paint side of the plastics department, and/or body shop department's ELPO teams or repair teams that work in a paint shop, during the period from July 30, 2003 to the date the Preliminary Approval Order is entered by the Court, who do not timely opt out pursuant to the process provided in the Preliminary Approval Order.

2.  that the Court designate for settlement purposes only the following class as a collective action pursuant to 29 U.S.C. section 216(b):

> All persons who perform or performed work in a cleanroom environment while employed by NUMMI as a production or maintenance employee in NUMMI's truck paint department, passenger paint department, paint side of the plastics department, and/or body shop department's ELPO teams or repair teams that work in a paint shop, during the period from July 30, 2004 to the date the Preliminary Approval Order is entered by the Court, and who timely submit consents to join by the deadline for submitting Claim Forms.

3.  that the Court appoint plaintiffs as class representatives of the Class and the representative plaintiffs for the collective action;

4.  that the Court appoint plaintiffs' attorneys as Class Counsel for the Class and the collective action;

5.  that the Court grant preliminary approval of the Settlement;

6.     that the Court approve mailing to the Class Members the proposed Notice of (1) Proposed Class Action Settlement and (2) Final Settlement Approval Hearing (Settlement, Exh. A), and the proposed Claim Form (*id.*, Exh. B);

8.     that the Court appoint The Garden City Group, Inc., as the Settlement Administrator;

9.     that the Court schedule a hearing for final approval of the Settlement on October 29, 2008.

This motion is made on the grounds that the Settlement is the product of arms-length, good-faith negotiations; is fair and reasonable to the Class; and should be preliminarily approved, as more fully discussed in the following memorandum in support of the motion.

The motion is based on this notice; the following memorandum in support of the motion; the accompanying Joint Stipulation of Class Settlement and Settlement Agreement and Release; the Declaration of James M. Finberg in Support of Motion for Preliminary Approval of Class Settlement; the proposed Order (1) Conditionally Certifying Settlement Class and Collective Action, (2) Granting Preliminary Approval to Proposed Class Action Settlement and Plan of Allocation, (3) Directing Dissemination of Notice and Claim Forms to Class, and (4) Setting Final Approval Hearing Date and Related Dates; the Court's record of this action; all matters of which the Court may take notice; and oral and documentary evidence presented at the hearing on the motion.

///

///

///

///

Dated: June 25, 2008.          JAMES M. FINBERG
                              ALTSHULER BERZON LLP


                              By:  _____/s/ James M. Finberg_____
                                            James M. Finberg
                                          Attorneys for Plaintiffs
                                          David Martin, *et al.*

# TABLE OF CONTENTS

*Page*

Table of Authorities ................................................................................................ iii

I.    INTRODUCTION............................................................................................ 1

II.   FACTS............................................................................................................. 2

    A.    The Parties' Claims and Defenses. ....................................................... 2

    B.    The Complaint and Amended Complaint............................................... 3

    C.    Class Counsel's Informal Investigation and Discovery......................... 4

    D.    Settlement Negotiations. ....................................................................... 5

    E.    Terms of the Settlement. ....................................................................... 5

        1.    Monetary Relief to Class Members....................................... 5

        2.    Plan of Allocation. ............................................................... 6

        3.    Additional Payments.. .......................................................... 6

            a.    Class Representative Payments. ............................... 7

            b.    Class Counsel Attorneys' Fees and Costs Payment............ 7

III.  CLASS CERTIFICATION AND DESIGNATION AS A COLLECTIVE ACTION................. 7

    A.    Class Certification Under Rule 23 Is Appropriate............................. 7

        1.    The Prerequisites of Rule 23(a) Are Satisfied. .................... 8

            a.    Rule 23(a)(1):  Numerosity ..................................... 8

            b.    Rule 23(a)(2):  Commonality ................................... 9

            c.    Rule 23(a)(3):  Typicality ...................................... 10

            d.    Rule 23(a)(4):  Adequacy of Representation ......................... 10

        2.    The Prerequisites of Rule 23(b) Are Also Satisfied.......................... 11

            a.    Common Questions Predominate Over Any Individual Issues............... 11

            b.    A Class Action Is the Superior Mechanism to Efficiently Resolve this Controversy............................................... 12

    B.    Designation as a Collective Action Under 29 U.S.C. § 216(b) Is Also Appropriate. ..... 12

**TABLE OF CONTENTS**
(*cont'd*)

*Page*

IV.   THE SETTLEMENT IS NON-COLLUSIVE AND FALLS WELL WITHIN THE
      RANGE OF POSSIBLE JUDICIAL APPROVAL.................................................................. 13

V.    THE PROPOSED NOTICE AND CLAIM FORM SATISFY DUE PROCESS...................... 14

VI.   PROPOSED SCHEDULING ORDER..................................................................................... 15

VII.  CONCLUSION....................................................................................................................... 16

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997) ................................................................................................10, 11

*Ansoumana v. Gristede's Operating Corp.,*
   201 F.R.D. 81 (S.D.N.Y. 2001)................................................................................... 12

*Blackie v. Barrack,*
   524 F.2d 891 (9th Cir. 1975).......................................................................................... 9

*Churchill Village, L.L.C. v. General Electric,*
   361 F.3d 566 (9th Cir. 2004) ...................................................................................... 14

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ..................................................................................................... 14

*Gautreaux v. Pierce,*
   690 F.2d 616 (7th Cir. 1982) ...................................................................................... 13

*Gerlach v. Wells Fargo & Co.,*
   No. 05-0585, 2006 WL 824652 (N.D. Cal. March 28, 2006)....................................... 12

*Hanlon v. Chrylser Corp.,*
   150 F.3d 1011 (9th Cir. 1998)........................................................................8, 9, 10, 11

*Harris v. Palm Springs Alpine Estates, Inc.,*
   329 F.2d 909 (9th Cir. 1964).......................................................................................... 8

*McNamara v. Bre-X Minerals Ltd.,*
   214 F.R.D. 424 (E.D. Tex. 2002) ............................................................................... 14

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................... 13

*Paul, Johnson, Alston & Hunt v. Graulty,*
   886 F.2d 268 (9th Cir. 1989).......................................................................................... 7

*In re Prudential Securities Inc. Ltd. Partnerships,*
   163 F.R.D. 200 (S.D.N.Y. 1995)................................................................................. 13

*Six Mexican Workers v. Arizona Citrus Growers,*
   904 F.2d 1301 (9th Cir. 1990)........................................................................................ 7

*In re Tableware Antitrust Litigation,*
   484 F.Supp.2d 1078 (N.D. Cal. 2007)......................................................................... 13

*Tierno v. Rite Aid Corp,*
   No. 05-02520, 2006 WL 2535056 (N.D. Cal. Aug. 31, 2006) ..................................... 12

# TABLE OF AUTHORITIES
### (cont'd)

Page

*In re Vitamins Antitrust Litigation,*
   No. 99-197, 2001 WL 856292 (D.D.C. July 25, 2001) .................................................... 13

*Vizcaino v. Microsoft Corp.,*
   290 F.3d 1043 (9th Cir. 2002).......................................................................................... 7

*Whiteway v. FedEx Kinko's Office & Print Services, Inc.,*
   No. 05-2320, 2006 WL 2642528 (N.D. Cal. Sept. 14, 2006)............................. 8, 9, 10, 12

**Statutes and Rules**

29 U.S.C.
   § 216 ............................................................................................................................ 1, 12
   § 1001 *et seq.*.................................................................................................................... 2

Fed. R. Civ. P.
   R. 23...........................................................................................................................*passim*

**Secondary Authorities**

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 11.41 (4th ed. 2006)................. 13

Manual for Complex Litigation, Third (Federal Judicial Center 1995)................................................. 13

## MEMORANDUM IN SUPPORT OF MOTION

### I.    INTRODUCTION

Plaintiffs David Martin, Perry Dean, Donald Alexander, and Anthony Silva, and defendant New United Motor Manufacturing, Inc. ("NUMMI") (collectively, the "Parties"), have reached a proposed $4.65 million, non-reversionary, settlement of this litigation on behalf of approximately 1,300 NUMMI employees. (Declaration of James M. Finberg in Support of Motion for Preliminary Approval of Class Settlement ["Finberg Decl."], ¶ 26.)  This amount exceeds the total amount of back wages that would be owed to the class if one were to use NUMMI's six-minute estimate of the amount of time class members spend donning and doffing per work day (in which case the back pay owed would be approximately $2.7 million); the settlement amount thus takes into account Defendant's risk that Plaintiffs would be able to prove that donning and doffing takes more than six minutes per day, or that Plaintiffs would prevail in obtaining additional amounts, such as liquidated damages or statutory penalties. (*Id.*)  If 50% of class members file claims, then the anticipated average recovery per class member will be more than $5,000.[1] The terms of the proposed settlement are set forth in the proposed Joint Stipulation of Class Settlement and Class Settlement Agreement and Release ("Settlement"), attached as Exhibit 1 to the proposed preliminary approval order.

In connection with the settlement approval process, the parties seek certification of an opt out settlement class of the California law claims, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and designation of the FLSA claim as a collective action. The proposed settlement class meets the requirements of Fed. R. Civ. P. 23(a) and (b)(3), which are applicable to class settlements, and section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), which authorizes collective actions.  Accordingly, this Court should certify a class under Rule 23, and also designate the action as a collective action under 29 U.S.C. § 216(b).

The Settlement is the product of arms-length negotiations between the Parties and falls within the range of reasonableness such that notice to the class is appropriate.  (Finberg Decl., ¶¶ 25-27.)  The

---

[1] If 100% of class members file claims (which is unlikely), then the average recovery per class member will still be over $2,500.

notice to be sent to the class members provides them with the best notice practicable under the circumstances and will allow each class member a full and fair opportunity to evaluate the Settlement and decide whether to participate.

Accordingly, this Court should grant preliminarily approval to the Settlement, approve the form and proposed manner of distribution of the class notice and related materials, and schedule a hearing for final approval of the Settlement consistent with the time frame set forth in this motion.

## II.    FACTS

### A.    The Parties' Claims and Defenses.

Defendant, NUMMI, manufactures vehicles in Fremont, California.  Plaintiffs and the settlement class that they seek to represent (the "Class" or "Class Members") are approximately 1,300 current and former NUMMI employees who perform or performed work in a "cleanroom" environment while employed by NUMMI as a maintenance or production employee in NUMMI's truck paint department, passenger paint department, in the paint side of the plastics department, in the body shop department's ELPO teams, or the body shop department's repair teams that work in the paint shop (collectively the "Covered Positions").

Plaintiffs contend that NUMMI does not properly compensate them for the time they spend donning and doffing antistatic coveralls and other equipment NUMMI requires them to wear in the cleanroom environments where they work.  This donning and doffing activity includes time spent walking between their locker rooms and work areas or team meeting locations, before and/or after their scheduled shifts.  (First Am. Compl., ¶¶ 15-24, Doc. No. 21.)  Plaintiffs contend that the antistatic coveralls and other gear serve multiple purposes, including but not limited to the protection of employees from skin exposure to hazardous substances and other industrial hazards and the prevention of contamination of the "clean room" environment in which Defendant manufactures vehicles, and that the donning and doffing of this gear is integral and indispensable to their principal activity.  As such, the time plaintiffs and the proposed class spend donning and doffing is "hours worked" under both federal and California wage and hour laws, and it is "principal activity" for which the employees must be compensated.  A subset of the Proposed Class consisting of individuals who work in NUMMI's "spray booths" also seek additional overtime compensation under the FLSA for break and lunch time during

which they are required to don and doff certain spray booth-specific protective equipment, such as respirators. (*Id.*, ¶¶ 25-32.) Plaintiffs further allege that NUMMI failed to provide them with correctly itemized wage statements. (*Id.*, ¶¶ 59, 80.) Plaintiffs further allege that by committing the unlawful acts alleged in their complaint, NUMMI engaged in unfair competition in violation of California Business and Professions Code section 17200 *et seq.* (*Id.*, ¶¶ 82-87.)

At all points during this litigation, NUMMI disputed, and it continues to dispute, plaintiffs' allegations, expressly denying any liability for any of the claims that plaintiffs or the Class have raised or could have raised. (*See generally* Answer to First Am. Compl., Doc. No. 22.) Were the litigation to continue, NUMMI has indicated that it would aggressively pursue a number of defenses. Specifically, NUMMI contends that plaintiffs' donning and doffing activity is time spent changing clothes and therefore within an exception to the FLSA, that the time spent donning and doffing is de minimis, and that plaintiffs' state law claims are preempted.

Although plaintiffs' counsel believe that plaintiffs' claims are meritorious, that plaintiffs would eventually prevail in certifying this case as a collective action and a class action, and that plaintiffs would prevail on the merits of their claims, plaintiffs' counsel have also considered factors such as the substantial costs of continued litigation and the possibility that the case, if not settled now, might not result in any recovery or might result in a recovery several years from now that is less favorable to the Class than that offered by the Settlement. (Finberg Decl., ¶ 27.) In light of such considerations, plaintiffs' counsel is satisfied that the terms and conditions of the Settlement are fair, reasonable and adequate and that the Settlement is in the best interests of the Class. (*Id.*)

**B.    The Complaint and Amended Complaint.**

Plaintiffs filed their complaint on July 30, 2007. (Compl., Doc. No. 1.) NUMMI filed its answer on October 1, 2007. (Answer, Doc. No. 6.) On January 16, 2008, Plaintiffs and NUMMI stipulated to tolling the statute of limitations for all Proposed Class Members' FLSA claims, effective November 1, 2007. (Stipulation, Doc. No. 15.)

Plaintiffs filed an Amended Complaint on April 8, 2008, which added to the Proposed Class individuals employed in the body shop department's ELPO teams and its repair teams that work in the paint shop. (First Am. Compl., Doc. No. 21.) NUMMI agreed that the claims of those newly added

1    Class Members would be tolled effective April 8, 2008.

2            **C.    Class Counsel's Informal Investigation and Discovery.**

3          Class Counsel conducted a thorough informal investigation of the facts of this case. Counsel

4    interviewed dozens of Class Members and helped them to prepare declarations that included detailed

5    descriptions of NUMMI's protective gear requirements and the Class Members' donning and doffing

6    routines. Counsel also collected time studies (in which Class Members measured how many minutes

7    they spent donning and doffing off-the-clock on a given work day), photographs, and other

8    corroborating documents from Class Members. (Finberg Decl., ¶¶ 13-16.)

9          In addition to the informal investigation, Class Counsel conducted extensive formal discovery,

10    which included depositions, requests for production of documents, interrogatories, and requests for

11    admission.[2] (*Id.*, ¶¶ 17-21.)

12          The interrogatories and requests for admission addressed a variety of factual issues, including

13    class size, NUMMI's protective gear requirements, and NUMMI's donning and doffing compensation

14    policies and practices. NUMMI's responses established many key facts, including the following:

15    NUMMI requires Class Members to wear antistatic coveralls and other gear; NUMMI requires Class

16    Members to don and doff the coveralls on NUMMI's premises; and NUMMI does not record or

17    compensate Class Members for time spent donning and doffing coveralls and other gear prior to or after

18    their scheduled shifts. (*Id.*, ¶ 18.)

19          NUMMI produced, and Plaintiffs' counsel reviewed, thousands of pages of documents. These

20    documents included NUMMI's employee manuals and training materials regarding required protective

21    gear; Material Safety Data Sheets describing workplace health and safety hazards to which Class

22    Members are exposed; notices regarding its donning and doffing policies; personnel records; and

23    communications by Class Members to management requesting compensation for donning and doffing

24

25      [2] Plaintiffs served Defendant with a Request for Entry Upon Property for Inspection and Rule

26    30(b)(6) Deposition Notice on October 31, 2007. Plaintiffs served Defendant with requests for
     production of documents and interrogatories in November 2007. Plaintiffs served additional

27    discovery requests, including requests for production, interrogatories, and requests for admission

28    in March 2008. (Finberg Decl., ¶¶ 13-16.)

1  time. (*Id.*, ¶ 19.)

2      In addition, NUMMI produced electronic data from its payroll and human resources records,

3  which Class Counsel analyzed to estimate damages, with the assistance of a statistical expert. (*Id.*, ¶

4  20.)

5      Class Counsel also took 30(b)(6) depositions of the corporate designees on the following topics:

6  NUMMI's donning and doffing policies, protective gear requirements, manufacturing processes,

7  scheduling and compensation policies; and organizational structure, and the physical layout of the

8  NUMMI plant. (*Id.*, ¶ 21.) Counsel also examined the designees regarding their job responsibilities,

9  their roles in setting and enforcing the relevant policies, and the foundations for their responses.

10      By the time of the mediation, Plaintiffs' Class Counsel were fully informed about the strengths

11  and weaknesses of their case and thoroughly familiar with: (1) NUMMI's protective gear requirements

12  and their relationship to NUMMI's workplace conditions and manufacturing processes; (2) NUMMI's

13  donning and doffing policies and practices; (3) Class Members' work schedules, overtime worked, and

14  donning and doffing routines; and (4) NUMMI's policies and practices regarding compensation for and

15  recording of the hours worked by Class Members. (*Id.*, ¶ 22.)

16      **D.    Settlement Negotiations.**

17      After conducting extensive discovery, the Parties participated in a private mediation with

18  experienced mediator, the Hon. Edward A. Infante (Ret.), of JAMS, San Francisco. (Finberg Decl., ¶

19  25.) Prior to this mediation, both Parties exchanged detailed mediation briefs that included their

20  respective assessments of the case, and Plaintiffs provided 57 exhibits of supporting documentation and

21  evidentiary materials. (*Id.*) The Parties' mediation took place on May 21, 2008. (*Id.*) Named plaintiffs

22  fully participated in the 10-hour mediation session. (*Id.*) At the conclusion of this session, the Parties

23  reached a settlement in principle, which they memorialized in a signed Memorandum of Understanding.

24  (*Id.*, ¶ 26.) Thereafter, the Parties continued their arms-length negotiations to finalize the Settlement.

25  (*Id.*)

26      **E.    Terms of the Settlement.**

27      **1.    Monetary Relief to Class Members.**

28  Each Class Member who submits a timely and valid claim form is eligible to receive a specified

1  share of the $4.65 million, non-reversionary, settlement fund based upon the formula described below.

2  (Settlement, § XI.A.2.)  Assuming every Class Member submits a valid claim, the average recovery per

3  class member—after deductions for the Class Representative Payments, the Class Counsel Attorneys'

4  Fees and Costs Payment, and the costs of settlement administration—will be more than $2,500.

5  (Finberg Decl., ¶ 26.)  The entire settlement fund will be paid out; no part of the $4.65 million will

6  revert to NUMMI.

7                          **2.    Plan of Allocation.**

8         The Settlement includes a proposed plan of allocation, based on a formula carefully designed to

9  fairly compensate Class Members.  (Finberg Decl., ¶ 27.)  Each Class Member who does not opt out and

10 who timely and properly completes a claim form (a "Claimant") will receive a share of the settlement

11 fund.  (Settlement, §§ VI.B., XI.A.2.)  The calculation of each Claimant's settlement share will be based

12 on the Claimant's number of Compensable Work Days during the covered period.  A Compensable

13 Work Day is a day on which NUMMI required the Class Member to work in a cleanroom, except that

14 shifts worked by Class Members in the paint side of the plastics department qualify as a Compensable

15 Work Day only if they were worked between July 30, 2003 and February 28, 2006 (when NUMMI

16 began permitting those Class Members to don and doff on-the-clock).  (*Id.*, § I.H.)  Because plaintiffs'

17 class claims seek the recovery of both wages and penalties, one-half of the settlement shares will be

18 deemed payment in settlement of wage claims (from which payroll withholding and deductions will be

19 taken) and one-half of the settlement shares will be deemed payment in settlement of claims for interest

20 on wages and penalties (from which no withholding or deductions will be taken).  (*Id.*, § XI.A.3.)

21 NUMMI will pay its share of applicable payroll taxes on the wage payments separately from, and in

22 addition to, the settlement fund.  (*Id.*, § X.A.)

23        If the settlement fund is not fully distributed following the distribution of the Class Members'

24 settlement shares (because not all Claimants cash their checks), any remaining funds (the "Remainder")

25 equal to or exceeding $30,000 will be redistributed *pro rata* to the remaining Claimants.   If the

26 Remainder is less than $30,000, it will be donated in the name of the *Martin v. NUMMI* Settlement Fund

27 to a charity or charities to be agreed upon by the Parties or selected by the Court.  (Settlement, § XI.C.)

28                          **3.    Additional Payments.**

### a.   Class Representative Payments.

Prior to the final approval hearing, plaintiffs will apply to the Court to receive $5,000 per plaintiff as the Class Representative Payments for services they have rendered to the Class. (Settlement, § VIII.B.) This amount is separate and apart from any other recovery to which plaintiffs will be entitled under the Settlement as Class Members. (*Id.*) This payment is intended to recognize the substantial time and effort that plaintiffs have expended on behalf of the Class, including numerous, regular, and detailed discussions with Class Counsel and attending the 10-hour mediation, as well as the risks they incurred during the course of this litigation, such as the risk of retaliation they incurred by acting as named plaintiffs while actively employed by NUMMI.

### b.   Class Counsel Attorneys' Fees and Costs Payment.

Prior to the final approval hearing, plaintiffs' counsel will petition the Court for attorneys' fees and costs in an amount equaling not more than 25% of the settlement fund for attorneys' fees plus not more than $35,000 for costs and expenses. (Settlement, § VIII.B.) In litigating this matter, plaintiffs' counsel conducted extensive pre-filing investigation; interviewed numerous Class Members and witnesses and assisted in the preparation of twenty-two sworn declarations; drafted various requests for production of documents, interrogatories, and requests for admission; reviewed thousands of pages of documents produced by Class Members, witnesses, and NUMMI, including documents regarding NUMMI's workplace conditions, organization, procedures, and policies; deposed two NUMMI department managers; and otherwise aggressively pursued the case. (Finberg Decl., ¶¶ 13-26.)

The compensation sought for Class Counsel is not excessive, as their request for 25% of the settlement fund is consistent with the Ninth Circuit's standard "benchmark" of 25% as fair and reasonable for a common fund attorneys' fee award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).

## III.   CLASS CERTIFICATION AND DESIGNATION AS A COLLECTIVE ACTION.

### A.   Class Certification Under Rule 23 Is Appropriate.

As part of the Settlement Agreement, NUMMI agreed to certification of the following settlement class under Fed. R. Civ. P. Rule 23:

All persons who perform or performed work in a cleanroom environment while employed by NUMMI as a production or maintenance employee in NUMMI's truck paint department, passenger paint department, paint side of the plastics department, and/or body shop department's ELPO teams or repair teams that work in a paint shop, during the period from July 30, 2003 to the date the Preliminary Approval Order is entered by the Court, who do not timely opt out pursuant to the process provided in the Preliminary Approval Order.

(Settlement, § IV.A.)[3]

When confronted with a request for certification of a settlement class, the court first ascertains "whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "In addition, . . . the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Id.* at 1022.

## 1.     The Prerequisites of Rule 23(a) Are Satisfied.

### a.     Rule 23(a)(1): Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be "impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no "magic number" necessary to satisfy numerosity, and "courts must examine the specific facts of each case to determine that numerosity has been satisfied," it is generally held that "numerosity may be presumed at a level of forty members." *Whiteway v. FedEx Kinko's Office & Print Servs., Inc.*, No. 05-2320, 2006 WL 2642528, at *4 & n.3 (N.D. Cal. Sept. 14, 2006) (citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964)). In this case, the Class includes approximately 1,300 employees, all of whom are readily identifiable by NUMMI. (Finberg Decl., ¶ 28.) Therefore, numerosity as required by Rule

---

[3] Although Class Counsel originally believed a sub-class on behalf of those employees who don and doff additional spray booth-specific gear (see section II.A, *supra*) might be appropriate, Class Counsel have concluded that the sub-class members were injured in the same way as the rest of the class, from the same NUMMI policy: all of the claims are based on NUMMI's failure to properly compensate for time spent donning and doffing required gear on a given work day. Accordingly, the named plaintiffs all meet the typicality standard for both sub-class members and all class members generally. See section III.A.1.c, *infra*. As a result, there is no need for a sub-class.

23(a)(1) is satisfied.

### b. Rule 23(a)(2): Commonality

Rule 23(a) also requires that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In the Ninth Circuit, this requirement "has been construed permissively." *Hanlon*, 150 F.3d at 1019. Specifically, "[a]ll questions of fact and law need not be common to satisfy the rule." *Id.* Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* "Factual variations or individual differences concerning damages, for example, will generally not defeat commonality." *Whiteway*, 2006 WL 2642528, at *4 (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)).

Several common questions of fact and law exist, including:

1.    Whether Defendant maintains a policy and practice of suffering and/or permitting Class Members to work during pre-shift donning periods, which commence when these employees retrieve their NUMMI-provided clean-room coveralls from their assigned coverall lockers;

2.    Whether Defendant failed to compensate Class Members for hours worked prior to the start of their scheduled shifts during pre-shift donning periods;

3.    Whether Defendant maintains a policy and practice of suffering and/or permitting Class Members to work during post-shift doffing periods, which end when these employees deposit their NUMMI-provided clean-room coveralls in their assigned coverall lockers;

4.    Whether Defendant failed to compensate Class Members for hours worked after the end of their scheduled shifts during post-shift doffing periods;

5.    Whether Defendant failed to properly compensate Class Members for work performed during meal and/or rest periods when these employees don and doff spray booth-specific PPE;

6.    Whether Defendant failed to pay Class Members overtime compensation in violation of the California Labor Code and related regulations;

7.    Whether Defendant failed to keep and furnish class members with accurate records of hours worked, in violation of the California Labor Code and related regulations;

1    8.    Whether Defendant failed to pay its employees all wages due within the time

2  required by law after their employment ended, in violation of California law;

3    9.    Whether Defendant's conduct violated the California Unfair Competition Law,

4  Cal. Bus. & Prof. Code §17200 *et seq.*

5    These issues satisfy commonality for purposes of Fed. R. Civ. P. 23(a)(2).

### c.    Rule 23(a)(3): Typicality

7    Rule 23 also requires that the "claims or defenses of the representative parties [be] typical of the

8  claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As a general matter, the typicality analysis

9  "tend[s] to merge" with the commonality analysis, *Whiteway*, 2006 WL 2642528 at *6, and, like Rule

10  23(a)(2), Rule 23(a)(3) establishes a "permissive" standard, *Hanlon,* 150 F.3d at 1020. Typicality is

11  established if "representative claims are . . . reasonably co-extensive with those of absent class members;

12  they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

13    Here, plaintiffs contend that plaintiffs' claims arise out of the same type of factual and legal

14  circumstances surrounding the claims of each Class Member. Plaintiffs contend that they regularly

15  donned and doffed cleanroom coveralls and other protective gear, as required by NUMMI, and they

16  allege the same injury—*i.e.*, that NUMMI failed to properly compensate them for the time they spent

17  donning and doffing such gear. As such, the typicality requirement of Rule 23(a)(3) is satisfied.

### d.    Rule 23(a)(4): Adequacy of Representation

19    Rule 23 also requires that the class representatives fairly and adequately protect the interests of

20  the class. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where the class representatives:

21  (1) have common, and not antagonistic, interests with unnamed class members, and (2) will vigorously

22  prosecute the interests of the class through qualified counsel. *See Amchem Products, Inc. v. Windsor,*

23  521 U.S. 591, 625 (1997); *Hanlon*, 150 F.3d 1020.

24    Here, plaintiffs possess the same type of interests and suffered the same type of injury as the

25  other Class Members. In addition, plaintiffs have prosecuted this matter diligently through their

26  counsel. Class counsel has extensive experience in class action wage-and-hour litigation, including

27  federal and state overtime class actions. They also have the ability and resources to pursue these claims

28  vigorously. (Finberg Decl., ¶ 24.) They are well qualified to be appointed as Class Counsel. (*Id.*, ¶¶ 5-

12, 24.)

Because the adequacy requirement of Rule 23(a)(4) is satisfied for purposes of certification of the settlement class, plaintiffs should be appointed as Class Representatives, and plaintiffs' counsel should be appointed as Class Counsel.

### 2.    The Prerequisites of Rule 23(b) Are Also Satisfied.

As the Ninth Circuit holds:

> To qualify for certification under [Rule 23(b)(3)], a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must "predominate over any questions affecting only individual members," and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy."

*Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).  Here, the requirements of Rule 23(b)(3) are satisfied.[4]

### a.    Common Questions Predominate Over Any Individual Issues.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Hanlon*, 150 F.3d at 1022.  It focuses on the "relationship between the common and individual issues."  *Id.*  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  *Id.* (quoting 7A Wright, Miller & Kane, *Fed. Prac. & Proc.* § 1778 (2d ed. 1986)).

In this case, NUMMI's liability centers on the company's alleged failure to properly compensate Class Members for all hours worked, *i.e.*, time spent donning and doffing cleanroom coveralls and other required gear.  As detailed above, plaintiffs contend that the resolution of their class claims involves several common issues.  Moreover, plaintiffs contend that the common issues will predominate because plaintiffs and the other Class Members hold or held similar positions in the same affected departments, and NUMMI has a common policy of requiring Class Members to don and doff required gear before and after their scheduled shifts without compensating Class Members for the time they spend fulfilling those

---

[4]    Since this motion is made in connection with a proposed class settlement, it is unnecessary to address or decide the fourth consideration contained in Rule 23(b)(3)—"manageability" of a trial—since there will be no trial if this settlement is approved.  *Amchem*, 521 U.S. at 620.

1    requirements. As a result, plaintiffs contend the central allegation of failure to compensate for all hours

2    worked raises common factual and legal issues that will predominate. *See Whiteway*, 2006 WL

3    2642528, at *10; *Tierno v. Rite Aid Corp,* No. 05-02520, 2006 WL 2535056, at *10 (N.D. Cal. Aug. 31,

4    2006); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001).

5              **b.    A Class Action Is the Superior Mechanism to Resolve this
                       Controversy Efficiently.**

6

7          Rule 23(b)(3)'s second requirement is that "resolution of the issues on a class wide basis [be]

8    superior to other methods available for the fair and efficient adjudication of the controversy." *Tierno*,

9    2006 WL 2535056, at *11. This requirement is satisfied because "there is no indication that class

10   members seek to individually control their cases, that individual litigation is already pending in other

11   forums, or that this particular forum is undesirable for any reason." *Id.* at *11. Furthermore, Class

12   Members may lack the resources to secure experienced, qualified counsel or to see litigation through to

13   completion. In addition, individual lawsuits from hundreds of individuals would be wasteful and

14   inefficient. *See, e.g., Whiteway,* 2006 WL 2642528, at *11. Accordingly, certification of this settlement

15   class is superior to any other method of resolving this matter, as it will promote economy, expediency,

16   and efficiency.

17         **B.    Designation as a Collective Action Under 29 U.S.C. § 216(b) Is Also Appropriate.**

18         As part of the Settlement Agreement, NUMMI also agreed that this case is appropriate for

19   designation as a collective action and that the following group should be certified as an opt-in settlement

20   class under 29 U.S.C. § 216(b):

21         All persons who perform or performed work in a cleanroom environment while employed by
           NUMMI as a production or maintenance employee in NUMMI's truck paint department,
22         passenger paint department, paint side of the plastics department, and/or body shop department's
           ELPO teams or repair teams that work in a paint shop, during the period from July 30, 2004 to
23         the date the Preliminary Approval Order is entered by the Court, and who timely submit consents
           to join by the deadline for submitting Claim Forms.
24

25   (Settlement, § IV.C.)

26         Under the FLSA, an action may be maintained by an employee or employees on behalf of others

27   who are "similarly situated." 29 U.S.C. § 216(b). *See, e.g., Gerlach v. Wells Fargo & Co.*, No. 05-

28   0585, 2006 WL 824652, at *1 (N.D. Cal. March 28, 2006) (quoting 29 U.S.C. § 216(b)).

1    Plaintiffs and Class Members engaged in the same basic donning and doffing activities.

2    NUMMI has a common policy of failing to properly compensate them for all hours worked donning and

3    doffing required gear. (First Am. Compl. ¶¶ 23-41.) Accordingly, certification of the settlement class

4    under 29 U.S.C. § 216(b) is appropriate.

5    **IV.    THE SETTLEMENT IS NON-COLLUSIVE AND FALLS WELL WITHIN THE RANGE**

6    **OF POSSIBLE JUDICIAL APPROVAL.**

7    "The claims, issues, or defenses of a certified class may be settled . . . only with the court's

8    approval." Fed. R. Civ. P. 23(e). Such approval "involves a two-step process in which the Court first

9    determines whether a proposed class action settlement deserves preliminary approval and then, after

10    notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecommc'ns*

11    *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the preliminary approval stage—the

12    present stage in this matter—the court need only "determine whether the proposed settlement is within

13    the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (internal

14    citations and quotations omitted). In other words, because the court cannot fully assess a settlement

15    prior to providing class members notice of the settlement and the opportunity to present objections, the

16    court's first-stage analysis consists of a review for "obvious deficiencies." *In re Prudential Sec. Inc.*

17    *Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).

18    To grant preliminary approval of the Settlement, the Court must find only that it is non-collusive

19    and within the range of possible final approval. *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078,

20    1079-80 (N.D. Cal. 2007); *see also* Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, §

21    11.41 (4th ed. 2006). This is a minimal standard.

22    As long as "preliminary evaluation of the proposed settlement does not disclose grounds to doubt

23    its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives

24    or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range

25    of possible approval," the Court should preliminarily approve the settlement. *In re Vitamins Antitrust*

26    *Litig.*, No. 99-197, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (quoting *Manual for Complex*

27    *Litigation, Third* (Federal Judicial Center 1995)). The Court may also direct the giving of notice to the

28    Class Members of a final approval hearing, "at which arguments and evidence may be presented in

1    support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426

2    (E.D. Tex. 2002) (quoting *Manual for Complex Litigation, Third*, at 237); 4 Newberg, § 11.25 (quoting

3    same).

4        Here, the Parties negotiated the proposed Settlement in good faith and at arms' length. (Finberg

5    Decl., ¶¶ 25-26.)   As noted above, extensive discovery has allowed Class Counsel—who are very

6    experienced wage-and-hour class action attorneys—to assess the strengths and weaknesses of the claims

7    against NUMMI and the benefits of the Settlement under the circumstances of this case.   Class Counsel

8    believe that the settlement is fair, reasonable, and adequate and is in the best interest of the Class

9    Members in light of all known facts and circumstances, including the risk of significant delay and

10   Defendant's asserted defenses.  (Finberg Decl., ¶ 27.)

11   **V.      THE PROPOSED NOTICE AND CLAIM FORM SATISFY DUE PROCESS.**

12       Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who

13   would be bound" by the proposed settlement.   Fed. R. Civ. P. 23(e)(1).   The notice standard is satisfied

14   here.

15       The notice provided to members of a class certified under Rule 23(b)(3) must be the "best notice

16   that is practicable under the circumstances."    Fed. R. Civ. P. 23(c)(2)(B).   Notice is satisfactory "if it

17   generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints

18   to investigate and to come forward and be heard."    *Churchill Village, L.L.C. v. General Electric*, 361

19   F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).   Moreover, notice that is mailed to each

20   member of a settlement class "who can be identified through reasonable effort" constitutes reasonable

21   notice.   *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974).   For any class certified under Rule

22   23(b)(3), the notice must inform class members "that the court will exclude from the class any member

23   who requests exclusion."   Fed. R. Civ. P. 23(c)(2)(B).

24       Here, the form and the manner of the class notice and the claim form have been negotiated and

25   agreed upon by all counsel.  (Settlement, Exhs. A-B.)  The notice will inform Class Members of, among

26   other things, (1) the nature of this action, the Settlement Class, Class Counsel, and the essential terms of

27   the Settlement; (2) the allocation of the Settlement fund, including the calculation of each Class

28   Member's settlement share, the requests for the Class Representative Payments and the Class Counsel

Attorneys' Fees and Costs Payment, and the Settlement Administration costs that will be deducted from the Settlement fund; (3) how to participate in the Settlement; (4) how to opt out of the Settlement; (5) how to comment on or object to the Settlement; (6) this Court's procedures for final approval of the Settlement; and (6) how to obtain additional information regarding this action and the Settlement. The notice is written in plain English and is organized and formatted so as to be as clear as possible. It encourages Class Members to contact Class Counsel or the Settlement Administrator with any questions.

The Parties propose that ten (10) days of the entry of an order granting this motion, NUMMI will provide to the Settlement Administrator a database containing all of the information necessary for producing the claim forms and mailing the class notice. (Settlement, § VI.A.) Within fourteen (14) days of receiving the database, the Settlement Administrator will mail the class notice and claim forms (and a pre-paid, self-addressed return envelope) to the last known address of each Class Member from NUMMI's records or the updated address from the National Change of Address database. (*Id.*) Notice will be sent by first-class mail. The Settlement Administrator will take all reasonable steps to obtain the correct address of any Class Members for whom the notice is returned by the post office as undeliverable and otherwise to provide the Class Notice. (*Id.*, §§ V., VI.) Due to the accuracy of NUMMI's records, the small size of the class, the fact that many class members are currently employed by NUMMI, and the obligations imposed on the Settlement Administrator by the Settlement, the Parties believe that there is no need for local newspaper advertisements or regional or national publications. (Finberg Decl., ¶ 28.)

The Parties propose that, under the notice plan outlined above, the Class Members will have 45 days after the notice is mailed to consider the proposed Settlement and object to the Settlement or request not to participate in the Settlement (Settlement, § VI.C.-D.), and 60 days after the notice is mailed to opt into the FLSA collective action and submit claims for settlement shares (*id.*, § VI.B.).

The foregoing notice plan provides the best notice practicable under the circumstances and will provide Class Members a full and fair opportunity to consider the terms of the proposed Agreement and make a fully informed decision on whether to participate, to object, or to opt out of the Settlement.

## VI.    PROPOSED SCHEDULING ORDER

The following schedule sets forth a proposed sequence for the relevant dates and deadlines,

assuming the Court preliminarily approves the Settlement.

| **Event** | **Time Limits According to Agreement** | **Date**[5] |
|---|---|---|
| Deadline for NUMMI to provide Class database | Within 10 days after date of Preliminary Approval Order | August 11, 2008 |
| Deadline to mail Class Notice to Class | Within 14 days after receipt of Class database | August 25, 2008 |
| Deadline to file Notice of Motion and Motion for Final Approval | 35 days prior to Final Approval Hearing | September 24, 2008 |
| Deadline for submission of requests not to participate | Must be postmarked or delivered to the Settlement Administrator within 45 days after the Class Notice is mailed | October 9, 2008 |
| Deadline for objections | Must be postmarked or delivered to the Settlement Administrator within 45 days after the Class Notice is mailed | October 9, 2008 |
| Deadline to file a reply brief responding to any objections | 2 weeks prior to Final Approval Hearing | October 15, 2008 |
| Deadline for submission of Claim Forms | Must be postmarked or delivered to the Settlement Administrator within 60 days after the Class Notice is mailed | October 24, 2008 |
| Final Approval Hearing | | October 29, 2008 |

## VII.  CONCLUSION

For the foregoing reasons, this Court should (1) conditionally certify the proposed settlement class; (2) conditionally designate the action as a collective action under the FLSA; (3) appoint plaintiffs as the Class Representatives for the Settlement Class; (4) appoint plaintiffs' counsel as Class Counsel for the settlement class and collective action; (5) grant preliminary approval to the parties' Settlement; (6) approve the mailing of the proposed Class Notice and Claim Form; (7) appoint The Garden City Group, Inc., as the Settlement Administrator; and (8) schedule a final approval hearing for October 29, 2008.

---

[5]     These dates assume that the Court grants preliminary approval on July 30, 2008.

1

2

3      Dated:   June 25, 2008.          JAMES M. FINBERG

4                                      ALTSHULER BERZON LLP

5

6                        By:            */s/ James M. Finberg*

7                                  James M. Finberg
                                  Attorneys for Plaintiffs
                                  David Martin, *et al.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28