1  JAMES M. FINBERG (SBN 114850)
   EVE H. CERVANTEZ (SBN 164709)
2  LINDA LYE (SBN 215584)
   PEDER THOREEN (SBN 217081)
3  JENNIFER SUNG (SBN 254741)
4  ALTSHULER BERZON LLP
   177 Post Street, Suite 300
5  San Francisco, CA 94108
   Telephone: (415) 421-7151
6  Facsimile: (415) 362-8064
   E-Mail: jfinberg@altshulerberzon.com
7  E-Mail: ecervantez@altshulerberzon.com
8  E-Mail: llye@altshulerberzon.com
   E-Mail: pthoreen@altshulerberzon.com
9  E-Mail: jsung@altshulerberzon.com

10 *Attorneys for Plaintiffs David Martin,*
   *Perry Dean, Donald Alexander,*
11 *Anthony Silva, and the proposed Plaintiff Class*

12
                    UNITED STATES DISTRICT COURT
13                 NORTHERN DISTRICT OF CALIFORNIA
                   SAN FRANCISCO/OAKLAND DIVISION
14

15 DAVID MARTIN, PERRY DEAN,           Case No. C07-03887 PJH
   DONALD ALEXANDER, AND
16 ANTHONY SILVA, on behalf of         DECLARATION OF JAMES M. FINBERG
   themselves and a class of those     IN SUPPORT OF MOTION FOR ORDER
17 similarly situated,                 (1) CONDITIONALLY CERTIFYING
                                       SETTLEMENT CLASS AND
18                                     COLLECTIVE ACTION, (2) GRANTING
              Plaintiffs,              PRELIMINARY APPROVAL TO
19                                     PROPOSED CLASS ACTION
        v.                             SETTLEMENT AND PLAN OF
20                                     ALLOCATION, (3) DIRECTING
                                       DISSEMINATION OF CLASS NOTICE
21                                     AND SETTLEMENT FORMS TO CLASS;
   NEW UNITED MOTOR                    AND (4) SETTING FINAL APPROVAL
22 MANUFACTURING, INC.,                HEARING DATEAND RELATED DATES.

23            Defendant.
                                       Date:       July 30, 2008
24                                     Time:       9:00 a.m.
                                       Courtroom:  3
25                                     Judge:      Hon. Phyllis J. Hamilton

26
27
28

I, James M. Finberg, declare as follows:

1. I am a partner with Altshuler Berzon LLP, the firm serving as Plaintiffs' counsel herein. I have been one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims on behalf of the proposed class. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

2. I am a member in good standing of the bar of the State of California, as well as the U.S. District Courts in California.

3. This Declaration is submitted in support of the Notice of Motion and Motion For Order: (1) Conditionally Certifying Settlement Class and Collective Action, (2) Granting Preliminary Approval to Proposed Class Action Settlement and Plan of Allocation, (3) Directing Dissemination of Notice, and Claim Form to the Class; and (4) Setting Date for Final Approval Hearing and Related Dates.

4. Attached hereto as Exhibit A is a true and correct copy of Altshuler Berzon LLP's firm resume.

**My Background And Experience**

5. I received a Bachelor of Arts degree, with honors in history and environmental studies, from Brown University in 1980. I received a Juris Doctor degree from the University of Chicago Law School in 1983. At the University of Chicago Law School, I was the Executive Editor of the University of Chicago Law Review.

6. From Fall 1983 through Summer 1984, I served as a law clerk to the Honorable Charles L. Levin, a Justice of the Supreme Court of the State of Michigan.

7. Since 2005, I have been listed by Best Lawyers in America as one of the best lawyers in America in the field of law and employment law. I am a fellow of the American College of Labor and Employment Lawyers. Since 2004, I have been designated by San Francisco Magazine as a Northern California "Super Lawyer," including being listed as one of the top 100 attorneys in Northern California since 2005. In 2003, I was selected by The Recorder legal newspaper (based on a survey of judges, arbitrators, mediators, and lawyers in the field) as the top plaintiffs' securities litigator in the San Francisco Bay Area. In 2004, I was selected by

The Recorder legal newspaper as one of the top plaintiffs' employment litigators in the San Francisco Bay Area. In 2006, I was selected by The Daily Journal as one of the Top 100 lawyers in California.

8. In 2005, I served as the President of the Bar Association of San Francisco. From 2000-2001, I served as Co-Chair of the delegation of Lawyer Representatives from the Northern District of California to the Ninth Circuit Judicial Conference. From 1997-1998, I served as co-chair of the Lawyers' Committee for Civil Rights of the San Francisco Bay Area, and I currently serve on its board.

9. I am a co-author of "Statistical and Other Expert Proof," in Employment Discrimination Law (4th ed., Lindemann and Grossman). I also edited the 2000 and 2002 Cumulative Supplements to Chapter 39, "Statistical Proof," of that treatise (3d ed.). I have been a contributor to Wage and Hour Laws: A State-by-State Survey (BNA, 2004) and to Fair Labor Standards Act: 2004 Cumulative Supplement (BNA, 2004).

10. I am author or co-author of the following articles, among others: Co-Author with Peder J. Thoreen, "The Use of Representative Testimony and Bifurcation of Liability and Damages in FLSA Collective Actions (ABA 2007); Co-Author with Peter E. Leckman, "Holding Customers Who Assist Securities Fraud Accountable Under State Law," Securities Litigation Report (Vol. 3, No. 5, May 2006); Author, "State Law Wage/Hour Class Actions: Alive And Well In Federal Court," ABA Labor and Employment Section 2005; Co-Author with Melissa Matheny, "A Developing Consensus: The PSLRA's 'Basis' Requirement Does Not Require the Disclosure of Confidential Sources in a Complaint," Securities Litigation Report (Vol. 2, No. 1, July/August 2005) (Glasser Legal Works). Co-Author with Chimène I. Keitner, "New Overtime Regulations Require Heightened Vigilance," San Francisco Attorney Magazine, Spring 2004; Co-Author with Chimène I. Keitner, "Summary of Proposed DOL Regulations Re FLSA Overtime Exemptions" (2003) (American Bar Association – Labor and Employment Law, Federal Labor Standards Legislation Committee Annual Report); "Title VII's Remedial Scheme: Employment Discrimination Class Actions at the Crossroads," San Francisco Attorney (August/September 2002); "Certification of Employment Discrimination Actions After The

1  Passage of the 1991 Civil Rights Act: (b)(2) or Not (b)(2), That Is The Question," Class Actions
2  & Derivative Suits, Vol. 10 (March 2000); Co-Author with Joshua P. Davis, "Allison v. Citgo
3  Petroleum Corp.- A Noble Retreat," Class Actions & Derivative Suits, Vol. 9, No. 1 (Winter
4  1999); Co-Author with Kelly Dermody, "Discovery in Employment Discrimination Class
5  Actions," in Litigation and Settlement of Complex Class Actions (Glasser Legal Works 1998);
6  Co-Author with Melanie M. Piech, "The Impact of the Private Securities Litigation Reform Act:
7  Unintended Consequences," Securities Reform Act Litigation Reporter, Vol. 6, No. 3 (Dec.
8  1998);  Co-Author with Karen Jo Koonan, "The Importance of Anecdotal Testimony to the Jury
9  Trial of a Title VII Class Action:  Lessons from Butler v. Home Depot," Class Actions &
10 Derivative Suits, Vol. 8, No. 3 (Summer 1998); "Northern District of California Requires Internet
11 Posting of Pleadings And Key Briefs In Securities Actions," "Securities Reform Act Litigation
12 Reporter" (1997); "Class Actions: Useful Devices That Promote Judicial Economy And Provide
13 Access to Justice," 41 New York Law School Law Review 353 (1997); Co-Author (with
14 Melvin R. Goldman), "Deposing Expert Witnesses" in Taking Depositions (ABA) (1989); Co-
15 Author (with George C. Weickhardt), "New Push For Chemical Weapons," Bulletin of the
16 Atomic Scientist (Nov. 1986); Comment, "The General Mining Law and The Doctrine of Pedis
17 Possessio: The Case For Congressional Action," 49 University of Chicago Law Review 1027
18 (1982).

19         11.     During the spring semester of 2008, I served as an Adjunct Professor of
20 Law at the University of California, Hastings College of Law, where I taught Employment
21 Discrimination Law.

22         12.     During my approximately 24 years of practice, I have served as an attorney
23 in many complex class actions.  I have represented plaintiff classes in class actions on dozens of
24 occasions, and have served as the principal, or lead, attorney representing a plaintiff class in well
25 over a dozen cases, including the following: Butler v. Home Depot, No. C94 4335 SI (settlement
26 of $87.5 million, plus comprehensive injunctive relief, in gender discrimination case in 1998);
27 Rosenburg v. Int'l Bus. Machines Corp., No. CV 06-00430 PJH (N.D. Cal.) ($65 million
28 settlement of wage and hour class and collective action in 2007); Satchell v. Federal Express

Corp., C03-2659 SI; C03-2878 SI (N.D. Cal.) (settlement of $55 million, plus comprehensive injunctive relief, of race and national origin discrimination claims in 2007); <u>Frank v. United Airlines</u>, No. C92 0692 MJJ (N.D. Cal.) ($36.5 million gender discrimination settlement in 2004); <u>Giannetto v. CSC Corp.</u>, No. CV 03-8201 (C.D. Cal.) ($24 million settlement of wage/hour case in 2005); <u>Gerlach v. Wells Fargo & Co.</u>, No. 05-00585 CW (N.D. Cal.) ($12.8 million settlement of wage and hour class and collective action in 2007); <u>Trotter v. Perdue Farms</u>, Case No. 99 893 (RRM) (U.S.D.C. Del.) ($10 million settlement in wage and hour case in 2002); <u>Thomas v. CSAA</u>, No. CH217752 (Alameda County Sup. Ct.) ($8 million settlement of insurance claim adjuster overtime case in 2002); <u>Gottlieb, et al v. SBC Communications, et al.</u>, No. CV-00-4139 AHM (C.D.Cal.) ($10 million ERISA settlement in 2002); <u>Buttram v. UPS</u>, No. 97-1590 MJJ (N.D. Cal.) ($12.2 million settlement, plus comprehensive injunctive relief, of race discrimination action, in 1999); <u>Church v. Consolidated Freightways, Inc.</u>, 1993 WL149840 (N.D. Cal.) ($13.5 million settlement in age discrimination case in 1993); <u>In re California Micro Devices Securities Litigation</u>, C 94 2817 VRW (N.D. Cal.) ($26 million in settlements -- approximately 100% of losses); <u>In re Network Associates, Inc. Securities Litigation</u>, C 99 1729 WHA (N.D. Cal.) ($30 million settlement in 2001); <u>In re Mediavision Technology Securities Litigation</u>, C 94 1015 EFL (N.D. Cal.) (settlements and judgments totaling $218 million).

**Thorough Investigation And Litigation of the Class Claims**

13.     **Overview.**  Before and during the formal litigation of this action, my colleagues and I conducted a thorough investigation into the merits of the potential claims and defenses.  We focused our investigation on both the underlying merits of class members' wage and hour claims – including both factual and legal issues – and the propriety of class certification.

14.     **Pre-filing investigation.**  During the pre-filing stage, we interviewed a number of the defendant's maintenance and production workers in the paint departments.  Those persons provided us with information regarding the protective gear NUMMI required them to wear, their donning and doffing routines, their schedules and the overtime hours they worked, their compensation, their workplace conditions, their job duties, the affected departments and positions, and related NUMMI policies and practices.

15.     Based on our pre-filing investigation, we prepared and filed a complaint on July 30, 2007, alleging violations of the FLSA, the wage and hour laws of California, and the Unfair Competition Law, California Business and Professions Code section 17200 *et seq*.

16.     **Post-Filing Informal Investigation.**  Prior to mediation, we conducted additional interviews of potential class members and witnesses who had contacted us and/or signed consent-to-join forms.  As a result of these interviews, we received approximately twenty-one signed declarations from NUMMI employees that described in detail their NUMMI employment histories, work schedules, protective gear requirements, donning and doffing routines, and overtime hours worked, as well as relevant NUMMI policies and practices. We also collected time studies (in which Class Members measured how many minutes they spent donning and doffing off-the-clock on a given work day), photographs, and other corroborating documents from Class Members.

17.     **Discovery.**  We also conducted extensive formal discovery, which included interrogatories, requests for admission, requests for production of documents, and depositions.

18.     We served NUMMI with a first set of interrogatories in November 2007. We served additional sets of interrogatories, as well as requests for admission, in March 2008. The interrogatories and requests for admission addressed a variety of factual issues, including class size, NUMMI's protective gear requirements, and NUMMI's donning and doffing compensation policies and practices.  NUMMI's responses established many key facts, including the following: NUMMI requires Class Members to wear antistatic coveralls and other gear; NUMMI requires Class Members to don and doff the coveralls on NUMMI's premises; and NUMMI does not record or compensate Class Members for time spent donning and doffing coveralls and other gear prior to or after their scheduled shifts.

19.     We also served NUMMI with multiple sets of requests for production of documents, in November 2007 and March 2008.  NUMMI produced, and we reviewed, thousands of pages of documents.  These documents included NUMMI's employee manuals and training materials regarding required protective gear; Material Safety Data Sheets describing workplace health and safety hazards to which Class Members are exposed; notices regarding its donning and

doffing policies; personnel records; and communications by Class Members to management requesting compensation for donning and doffing time.

20. NUMMI also produced an electronic database containing payroll data for the proposed class. These data included identifying information, dates of employment, department and group codes, wage rates, hours reported, and other fields of data. We analyzed these data, with the assistance of a statistical expert, to estimate the proposed class's damages.

21. We served Defendant with a Request for Entry Upon Property for Inspection and a Rule 30(b)(6) Deposition Notice on October 31, 2007. NUMMI designated its truck paint and passenger paint department managers as the persons most knowledgeable for the majority of key topics, and we examined the corporate designees on the following: NUMMI's donning and doffing policies, protective gear requirements, manufacturing processes, scheduling and compensation policies; and organizational structure, and the physical layout of the NUMMI plant. We also examined the designees regarding their job responsibilities, their roles in setting and enforcing the relevant policies, and the foundations for their responses.

22. Extensive analyses of these declarations, interrogatory responses, admissions, documents, payroll data, and depositions enabled us to assess the strengths and weaknesses of the factual case by the time of the mediation sessions.

23. **Legal Analysis.** In addition to the legal analyses we conducted prior to filing the complaint, we performed a comprehensive legal analysis prior to the May 21, 2008 mediation session. By the time of the mediation, we were fully informed about the strengths and weaknesses of the case.

24. Plaintiffs' counsel has, and continues to have, the resources necessary to effectively prosecute large-scale wage and hour class lawsuits such as the present action.

<u>Arms'-Length Settlement Negotiations</u>

25. **Overview.** The formal mediation session took place in San Francisco on May 21, 2008, presided over by the Hon. Edward A. Infante (Ret.), an experienced mediator of JAMS, San Francisco. Named plaintiffs fully participated in the 10-hour mediation session. Prior to and during this mediation session, the parties exchanged comprehensive mediation briefs

and supporting evidence covering the full range of legal, factual, damages, and class certification issues.

26. **Arms-Length negotiations.** The proposed settlement was negotiated in good faith and at arms' length. The parties vigorously pressed their positions throughout. The parties reached an agreement in principle, and reduced this agreement to a signed memorandum of understanding, at the mediation. After that, the parties continued their negotiations, exchanging extensive iterations of comments and edits to the proposed settlement agreement, involving every material term. These negotiations culminated in the signing of a Joint Stipulation of Settlement and Release on June 25, 2008, a copy of which is attached to the proposed Preliminary Approval Order. The settlement creates a $4.65 million, non-reversionary common fund on behalf of approximately 1300 NUMMI employees. If one uses NUMMI's estimate of the number of minutes class members spend donning and doffing per work day, the total amount of back wages owed to the class is approximately $2.7 million; the settlement amount takes into account Defendant's risk that Plaintiffs would prove that donning and doffing takes more time or that Plaintiffs would prevail in obtaining additional amounts, such as liquidated damages and statutory penalties. Assuming all Class Members submit valid claim forms, the anticipated recovery per class member is, on average, more than $2,500.

## Fair, Reasonable, And Adequate Settlement

27. In my view, the settlement constitutes a fair, reasonable, and adequate result for the class members in light of the risks, expenses, and delay of further litigation, as well as the strengths and weaknesses of the class members' claims. The plan of allocation fairly and reasonably compensates class members for the number of days on which NUMMI required them to don and/or doff off the clock. I base these opinions on the extensive discovery we have performed and my experience prosecuting other large wage and hour class actions.

28. The Class is readily and individually identifiable from NUMMI's payroll records, and the Parties have determined that a significant percentage of the Class Members remain employed by the company. Due to the accuracy of NUMMI's records, the size of the class, and the obligations imposed on the Settlement Administrator by the Settlement, the Parties

believe that there is no need for local newspaper advertisements or regional or national publications.

      I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct. Executed this 25th day of June 2008, at San Francisco, California.

                                      */s/ James M. Finberg*
                                      JAMES M. FINBERG