EXHIBIT 1

1  JAMES M. FINBERG (SBN 114850)
   EVE H. CERVANTEZ (SBN 164709)
2  LINDA LYE (SBN 215584)
   PEDER THOREEN (SBN 217081)
3  JENNIFER SUNG (SBN 254741)
   ALTSHULER BERZON LLP
4  177 Post Street, Suite 300, San Francisco, CA 94108
   Telephone: (415) 421-7151
5  Facsimile: (415) 362-8064
   E-Mail: jfinberg@altshulerberzon.com
6  E-Mail: ecervantez@altshulerberzon.com
   E-Mail: llye@altshulerberzon.com
7  E-Mail: pthoreen@altshulerberzon.com
   E-Mail: jsung@altshulerberzon.com
8
   *Attorneys for Plaintiffs*
9  *David Martin, Perry Dean, Donald Alexander,*
   *Anthony Silva, and the proposed Plaintiff Class*
10
   MARLENE S. MURACO (SBN 154240)
11 ERICA H. KELLEY (SBN 221702)
   LITTLER MENDELSON
12 A Professional Corporation
   50 W. San Fernando St., 14 Fl., San Jose, CA 95113
13 Telephone: (408) 998-4150
   Facsimile: (408) 288-5686
14 E-Mail: mmuraco@littler.com
   E-Mail: ekelley@littler.com
15
16                    UNITED STATES DISTRICT COURT

17                    NORTHERN DISTRICT OF CALIFORNIA

18                    SAN FRANCISCO/OAKLAND DIVISION

19 DAVID MARTIN, PERRY DEAN,            Case No. C07-03887 PJH
   DONALD ALEXANDER, AND
20 ANTHONY SILVA, on behalf of          **JOINT STIPULATION OF CLASS**
   themselves and a class of those      **SETTLEMENT AND CLASS**
21 similarly situated,                  **SETTLEMENT AGREEMENT AND**
                                        **RELEASE**
22              Plaintiffs,

23         v.

24 NEW UNITED MOTOR
   MANUFACTURING, INC.,
25
                Defendant.
26
27
28

Subject to its terms and conditions and the approval of the Court, this Joint Stipulation of Class Settlement and Class Settlement Agreement and Release (the "Settlement" or "Agreement") is made and entered into by and between plaintiffs David Martin, Perry Dean, Donald Alexander, and Anthony Silva ("Plaintiffs"), individually and on behalf of the putative class, and defendant New United Motor Manufacturing, Inc. ("NUMMI"). Plaintiffs and NUMMI are jointly referred to in this Settlement as the "Parties."

## I.    DEFINITIONS

In addition to terms defined elsewhere in the Settlement, as used in this Settlement the following terms have the meanings indicated below:

A.    "Action" means the civil action titled *David Martin, et al., on behalf of themselves and a class of those similarly situated, Plaintiffs, v. New United Motor Manufacturing, Inc., Defendant,*" No. C07-3887 PJH (N.D. Cal.).

B.    "Claimant" means a Class Member who has submitted a timely and valid Claim Form pursuant to this Settlement.

C.    "Claim Form" means the form by which potential Class Members may claim their Settlement Shares and consent to join the FLSA collective action, substantially in the form attached to this Settlement as Exhibit B.

D.    "Class" means all persons who perform or performed work in a cleanroom environment while employed by NUMMI as a production or maintenance employee in NUMMI's truck paint department, passenger paint department, paint side of the plastics department, and/or body shop department's ELPO teams or repair teams that work in a paint shop, during the period from July 30, 2003 to the date the Preliminary Approval Order is entered by the Court, and who do not timely submit a valid request not to participate in the Settlement.

E.    "Class Counsel" means Altshuler Berzon LLP.

F.    "Class Member" is a member of the Class.

G.    "Class Notice" means the Notice of (1) Proposed Class Settlement and (2) Final Settlement Approval Hearing to be sent to all potential Class Members after the Court grants preliminary approval of the Settlement, substantially in the form attached to this Settlement as Exhibit

A. The Class Notice will inform the potential Class Members of the methods and deadlines for submitting claims, objecting to the Settlement, and electing not to participate in the Settlement.

H.     "Compensable Work Day" means a single work shift, regardless of the total number of shift hours, during which a Class Member was employed by NUMMI in a Covered Position during the Covered Period and required to perform work in a cleanroom environment; *provided* that shifts worked by Class Members in the paint side of the plastics department shall only qualify as a "Compensable Work Day" if they were worked between the dates of July 30, 2003 and February 28, 2006.

I.     "Counsel for NUMMI" means Littler Mendelson, A Professional Corporation.

J.     "Court" means the United States District Court for the Northern District of California, San Francisco/Oakland Division.

K.     "Covered Period" means the period from July 30, 2003, to the date the Preliminary Approval Order is entered by the Court.

L.     "Covered Position" means any production or maintenance employee in NUMMI's truck paint department, passenger paint department, paint side of the plastics department, or body shop department's ELPO teams or repair teams that work in the paint shop, who performs or performed work in a cleanroom environment.

M.     "Final" means the last of the following dates, as applicable:

    1.     The date on which the Final Approval Order has been entered, if no objection to the Settlement was filed.

    2.     The last date on which a notice of appeal from the Final Approval Order may be filed, and none is filed, if an objection to the Settlement was filed.

    3.     If a timely appeal from the Final Approval Order is filed, the latter of the following dates:

        a.     the last date by which a petition for writ of *certiorari* by the United States Supreme Court (the "Supreme Court") seeking review of a decision affirming the Final Approval Order by the United States Court of Appeals for the Ninth Circuit (the "Ninth Circuit") may be filed, and none is filed by that date; or

b.    if a petition for a writ of *certiorari* by the Supreme Court, seeking review of the Final Approval Order or of the Ninth Circuit's decision on an appeal from the Final Approval Order is timely filed, the date on which the Supreme Court denies the petition or the Supreme Court affirms the Final Approval Order.

N.    "Final Approval Order" means the Court's order granting final approval of the Settlement, which will constitute a "judgment" within the meaning of Rule 58(a), Federal Rules of Civil Procedure.

O.    "Notice Materials" means the Class Notice, the Claim Form, and a pre-paid, self-addressed return envelope.

P.    "Preliminary Approval Order" means the Court's order granting preliminary approval of the Settlement.

Q.    "Qualified Settlement Fund" or "QSF" means the qualified settlement fund set up by the Settlement Administrator with the Settlement Payment and includes any interest earned on the Settlement Payment.

R.    "Settlement Administrator" means The Garden City Group, Inc., who will perform the duties set forth in the Agreement.

S.    "Settlement Payment" means the payment by NUMMI to fund the QSF pursuant to this Settlement of $4,650,000.00. The Settlement Payment plus the interest earned shall be the sole source of funds for payment of (i) the Settlement Shares, (ii) the Class Representative Payments, (iii) the Class Counsel Attorneys' Fees and Costs Payment, and (iv) the reasonable fees and expenses of the Settlement Administrator. NUMMI will make a payment to the QSF separately from and in addition to the Settlement Payment in order to cover its share of payroll taxes and deductions, as discussed below in section XI.

T.    "Settlement Share" means each Claimant's share of the Net QSF, as calculated pursuant to this Settlement.

## II.    RECITALS

A.    On July 30, 2007, Plaintiffs commenced the Action on behalf of themselves and all other individuals allegedly similarly situated (the "Proposed Class") with respect to the claims they asserted.

B.    In the Action, Plaintiffs alleged that NUMMI failed to pay them and the Proposed Class wages for time spent donning and doffing antistatic or "cleanroom" coveralls and other equipment they are required to wear in order to perform their jobs, including time spent walking between their locker rooms and work areas or team meeting locations, before and/or after their scheduled shifts.  Plaintiffs sought compensation, including straight time and overtime, due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the California wage-and-hour laws.  A subset of the Proposed Class consisting of individuals who work in NUMMI's "spray booths" also sought additional overtime compensation under the FLSA for time spent donning and doffing spray booth-specific equipment, such as respirators, during their rest and meal breaks.  Plaintiffs further alleged that NUMMI failed to provide them with accurate records of hours worked or timely pay all wages due employees whose employment with NUMMI had ended, as required by California law.  Plaintiffs further alleged that by committing the unlawful acts alleged in their complaint, NUMMI engaged in unfair competition in violation of California Business and Professions Code § 17200 *et seq.*

C.    On October 1, 2007, NUMMI answered the complaint in the Action.  NUMMI denied Plaintiffs' material allegations; maintained that the Court should not certify the class action and the collective action proposed by Plaintiffs, that Plaintiffs and the Proposed Class were properly paid all wages dues under the FLSA and California wage-and-hour law, and raised other defenses.

D.    On January 16, 2008, Plaintiffs and NUMMI stipulated to tolling the statute of limitations for all Proposed Class Members' FLSA claims, effective November 1, 2007.

E.    On April 8, 2008, Plaintiffs filed an amended complaint, which clarified the spray booth-related claims asserted in the Action and added to the Proposed Class individuals employed in the body shop department's ELPO teams and its repair teams that work in the paint shop.  NUMMI agreed that the claims of those newly added members of the Proposed Class whose claims were not covered by the tolling agreement referenced in Paragraph X, above, would be tolled effective April 8, 2008.

F.    On May 8, 2008, NUMMI answered the amended complaint.

G.      In the course of litigating the Action, the Parties have conducted substantial discovery, including the production of thousands of pages of documents and electronic payroll data, and the taking of depositions of two NUMMI managers about the core practices at issue in the Action.  Plaintiffs also retained a statistical expert to analyze the payroll data and prepare a damages analysis.

H.      On May 21, 2008, after good-faith negotiations presided over by the Honorable Edward A. Infante (Ret.) of JAMS, during which each Party, represented by their respective counsel, recognized the substantial risk of an adverse result in the Action, the Parties agreed to settle the Action and all other matters covered by this Settlement.

I.      Class Counsel have conducted a thorough investigation into the facts of the Action. Based on the foregoing discovery and their own independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by NUMMI, and potential appellate issues.

J.      It is the mutual desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims raised in or related in any way to the Action.  In order to achieve a full and complete release of the released persons, the Class, including Plaintiffs and each Class Member, acknowledges that this Settlement is intended to include and resolve all claims arising out of the facts alleged in the complaint in this Action involving the donning and doffing of cleanroom coveralls and spray booth gear by production and maintenance employees in NUMMI's truck paint department, passenger paint department, the paint side of the plastics department, and the body shop department's ELPO teams and its repair teams, who perform or performed work in a cleanroom environment.

K.      This Settlement represents a compromise of highly disputed claims.  Nothing in this Settlement is intended or will be construed as an admission by NUMMI that Plaintiffs' claims in the Action have merit or that it has any liability to Plaintiffs or the Class on those claims, or as an admission by Plaintiffs that NUMMI's defenses in the Action have merit.

## III.    DUTIES OF THE PARTIES TO SEEK PROMPT COURT APPROVAL

A.      Promptly upon execution of this Settlement, the Plaintiffs will move the Court for entry of the Preliminary Approval Order, including the following terms:

1.    Conditionally certifying the Class as an opt-out class under Rule 23, Federal Rules of Civil Procedure, and provisionally certifying the Action as a national FLSA opt-in collective action under section 16(b) of the FLSA, 29 U.S.C. § 216(b).

2.    Preliminarily approving the Settlement.

3.    Scheduling a final approval hearing on the questions of (1) whether the Settlement should be finally approved as fair, reasonable, and adequate as to the Class Members; (2) whether the Court should grant Plaintiffs' motion for the Class Representative Payments; and (3) whether the Court should grant Class Counsel's motion for the Class Counsel Attorneys' Fees and Costs Payment.

4.    Approving as to form and content the Class Notice and Claim Form and setting deadlines for submitting completed Claim Forms, electing not to participate in the Settlement, and serving and filing objections to the Settlement.

5.    Appointing a Settlement Administrator to exercise the duties set forth in this Settlement.

6.    Directing the Settlement Administrator to mail the Class Notice, Claim Form, and pre-paid, self-addressed return envelope by first-class mail to the potential Class Members.

B.    Any disagreement among Parties concerning the final forms of the Class Notice, Claim Form, or other documents necessary to implement the Settlement will be referred to the Court for resolution.

## IV.    CERTIFICATION OF A RULE 23 CLASS AND A FLSA COLLECTIVE ACTION

A.    The Parties will submit to the Court a proposed Preliminary Approval Order that will certify the following class as an opt-out class under Rule 23, Federal Rules of Civil Procedure:

> All persons who perform or performed work in a cleanroom environment while employed by NUMMI as a production or maintenance employee in NUMMI's truck paint department, passenger paint department, paint side of the plastics department, and/or body shop department's ELPO teams or repair teams that work in a paint shop, during the period from July 30, 2003 to the date the Preliminary Approval Order is entered by the Court, who do not timely opt out pursuant to the process provided in the Preliminary Approval Order.

B.    The proposed Preliminary Approval Order will make the following factual findings:

1.    The Class is ascertainable.

2.    The Class Members are so numerous as to make it impracticable to join all Class Members as named plaintiffs in this Action.

3.    There are common questions of law and fact including, but not limited to, the following:

a.    Whether Defendant maintains a policy and practice of suffering and/or permitting Class Members to work during pre-shift donning periods, which commence when these employees retrieve their NUMMI-provided clean-room coveralls from their assigned coverall lockers;

b.    Whether Defendant failed to compensate Class Members for hours worked prior to the start of their scheduled shifts during pre-shift donning periods;

c.    Whether Defendant maintains a policy and practice of suffering and/or permitting Class Members to work during post-shift doffing periods, which end when these employees deposit their NUMMI-provided clean-room coveralls in their assigned coverall lockers;

d.    Whether Defendant failed to compensate Class Members for hours worked after the end of their scheduled shifts during post-shift doffing periods;

e.    Whether Defendant failed to properly compensate Class Members for work performed during meal and/or rest periods when these employees don and doff spray booth-specific PPE;

f.    Whether Defendant failed to pay Class Members overtime compensation in violation of the California Labor Code and related regulations;

g.    Whether Defendant failed to keep and furnish class members with accurate records of hours worked, in violation of the California Labor Code and related regulations;

h.    Whether Defendant failed to pay its employees all wages due within the time required by law after their employment ended, in violation of California law;

i.    Whether Defendant's conduct violated the California Unfair Competition

Law, Cal. Bus. & Prof. Code §17200 et seq., as alleged in this Complaint.

4.    Plaintiffs' claims are typical of the claims of the Class Members with respect to their alleged unpaid hours worked during the Covered Periods.

5.    Plaintiffs and Class Counsel will fairly and adequately protect the interests of the Class.

6.    Questions of law and fact common to the Class Members predominate over any questions affecting any individual member in the Class, and a class action is superior to other available means for the fair and efficient adjudication of the controversy.

C.    The proposed Preliminary Approval Order will also designate the following class as a collective action under the FLSA, 29 U.S.C. § 216(b):

> All persons who perform or performed work in a cleanroom environment while employed by NUMMI as a production or maintenance employee in NUMMI's truck department, passenger paint department, paint side of the plastics department, and/or body shop department's ELPO teams or repair teams that work in a paint shop, during the period from July 30, 2004 to the date the Preliminary Approval Order is entered by the Court, and who timely submit consents to join by the deadline for submitting Claim Forms.

D.    The proposed Preliminary Approval Order will also find that with respect to the claim that NUMMI failed to pay Class Members overtime premiums for all hours worked in excess of 40 hours per week as required by the FLSA, all Class Members are similarly situated within the meaning of section 16(b) of the FLSA.

## V.    APPOINTMENT AND DUTIES OF SETTLEMENT ADMINISTRATOR

A.    The Settlement Administrator shall perform the following duties in connection with administration of the Settlement: (i) using the data provided by NUMMI to prepare the Claim Forms for each potential Class Member, as described in section VI.B. of this Settlement; (ii) obtaining updated forwarding addresses for potential Class Members using appropriate methods, as described in section VI.A. of this Settlement; (iii) mailing the Notice Materials to potential Class Members; (iv) tracking non-delivered Notice Materials and taking reasonable steps to re-send them to potential Class Members' current addresses; (v) tracking and timely reporting to Class Counsel and Counsel for NUMMI returned Claim Forms and submitted requests not to participate in Settlement; (vi) calculating the amounts due to each Claimant pursuant to the Settlement; (vii) contracting with Pro Business to obtain any tax-related

1    information about those Claimants who have been employed by NUMMI at any time during 2008; (viii)

2    calculating the applicable payroll taxes and deductions with NUMMI as the claimants' employer; (ix)

3    resolving disputes (if any) by Class Members regarding the number of Compensable Work Days or

4    other matters, and notifying Class Counsel and Counsel for NUMMI of such disputes and their

5    resolution; (x) establishing the Qualified Settlement Fund ("QSF"); and (xi) contacting all Claimants

6    who have not cashed their Settlement Share checks to remind them to do so before the six-month

7    deadline for doing so expires.

8        B.    The Settlement Administrator will obtain tax-related information for those Claimants

9    who have been employed by NUMMI at any time during 2008 directly from Pro-Business.  NUMMI

10   will provide the Settlement Administrator with reasonable access to records it maintains in order to

11   perform the Settlement Administrator's duties.

12       C.    All disputes relating to the Settlement Administrator's performance of its duties will be

13   referred to the Court, if necessary, which will have continuing jurisdiction over this Settlement until all

14   payments and obligations contemplated by this Settlement have been fully carried out.

15   **VI.    NOTICE TO THE CLASS OF THE SETTLEMENT AND THE CLAIM PROCESS**

16       **A.    Mailing the Class Notice and Claim Form to the Potential Class Members**

17       1.    Within ten (10) days after the Court enters its Preliminary Approval Order,

18   NUMMI will provide to the Settlement Administrator a database that lists, for each potential

19   Class Member, the potential Class Member's name; Social Security number; last known address

20   and telephone numbers; and for each Covered Position held during the Covered Period, the

21   Department and Group names, dates of employment in the Covered Position, and number of

22   Compensable Work Days.  This database will be drawn from NUMMI's payroll and other

23   business records and in a format acceptable to the Settlement Administrator.  NUMMI will

24   consult with the Settlement Administrator prior to the date for providing this information to

25   ensure that the format will be acceptable to the Settlement Administrator.  NUMMI also will

26   provide Class Counsel with a list of each potential Class Members' name; and for each Covered

27   Position held during the Covered Period, the Department and Group names, dates of employment

28   in the Covered Position, and number of Compensable Work Days.  The data provided to the

Settlement Administrator and Class Counsel will remain confidential and will not be disclosed to anyone, except as required to applicable tax authorities, pursuant to NUMMI's express written consent, or by order of the Court.

2.      Within fourteen (14) days after NUMMI provides to the Settlement Administrator the database pursuant to section VI.A., the Settlement Administrator will mail, by first-class mail, the Notice Materials (including Class Notice, Claim Form, and pre-paid, self-addressed return envelope) to all potential Class Members at their last known address, unless modified by any updated address information that the Settlement Administrator obtains in the course of administration of the Settlement.

3.      The Settlement Administrator will use standard devices, including the National Change of Address database or equivalent, to obtain forwarding addresses prior to mailing and will use appropriate skip tracing to take appropriate steps to maximize the probability that the Notice Materials will be received by all potential Class Members.

**B.      Claim Form**

1.      The Claim Form mailed to the potential Class Members will show for the recipient potential Class Member his or her estimated Settlement Share, and for each Covered Position he or she held during the Covered Period: the Department and Group names, dates of employment in the Covered Position, and number of Compensable Work Days.  The estimated Settlement Share shall be calculated under the assumption that (i) the Court finally approves the Settlement; (ii) all Class Members participate and submit valid claims; and (iii) the Court approves the amounts sought for the Class Representative Payments, the Class Counsel Attorneys' Fees and Costs Payment, and the payment to the Settlement Administrator.

2.      Class Members will have the opportunity to challenge the information pre-printed on their individualized Claim Forms, including the Department and Group names, dates of employment in the Covered Position, and number of Compensable Work Days for each Covered Position, by submitting a written challenge along with their signed Claim Form and supporting documentation to the Settlement Administrator within the time period provided for submitting the Claim Form.  Any challenges to the information pre-printed on the Claim Form must be

supported by documentary evidence; the Settlement Administrator will reject any challenge not supported by such evidence.

3.     Timely challenges submitted with documentary evidence will be resolved without hearing by the Settlement Administrator after consultation with Class Counsel and Counsel for NUMMI. NUMMI's records will be presumed correct, but the Settlement Administrator will evaluate the evidence submitted by the Class Member and will make a final determination based on its evaluation of all the evidence presented.

4.     The Class Members will have sixty (60) days after the date on which the Settlement Administrator mails the Notice Materials (including Class Notice, Claim Form, and pre-paid, self-addressed return envelope) to complete and submit to the Settlement Administrator the Claim Form. A completed Claim Form will be deemed timely submitted to the Settlement Administrator if it is (i) mailed to the Settlement Administrator by first-class mail and postmarked by not later than the deadline for submission stated in above; or (ii) it is delivered to the Settlement Administrator by the deadline for submission stated above, whether by mail, facsimile transmission, professional delivery, or personal delivery.

5.     In the event that a Claim Form is submitted timely but is deficient in one or more respects, the Settlement Administrator will return the Claim Form to the Class Member within five (5) business days of receipt with a notice explaining the deficiencies and stating that the Class Member will have ten (10) business days from the date of the deficiency notice to correct the deficiency and resubmit the Claim Form. The envelope containing the resubmitted Claim Form must be postmarked within ten (10) business days of the date of the deficiency notice to be considered timely, absent a showing of good cause. If necessary, the Class Member will be sent a second deficiency notice to correct any deficiency concerning a resubmitted Claim Form, which will be governed by the same timeliness requirements as the first deficiency notice.

6.     Information regarding which Class Members submit Claim Forms and which Class Members do not submit Claim Forms will be shared within NUMMI on a need-to-know basis, to the extent feasible and consistent with the Settlement. Specifically, the dissemination of such information will be limited, to the extent feasible, to NUMMI's outside counsel, NUMMI's

in-house counsel, and NUMMI's Human Resources Department. NUMMI will have no policy of disseminating such information to managers within Class Members' chain of command. These limitations will not prevent NUMMI from sharing any information with any NUMMI employee if the sharing of such information is necessary to accomplish legitimate business goals or the fulfillment of the aims of this Settlement. They also will not prevent the filing of redacted Claims Forms as provided by section VI.F.4. of this Settlement.

**C.      Objection to Settlement**

1.      The potential Class Members will have forty-five (45) days after the date on which the Settlement Administrator mails the Notice Materials (including Class Notice and Claim Form) to object to the Settlement by serving on the Settlement Administrator, Class Counsel, and Counsel for NUMMI, and filing with the Court, by the forty-five (45) day deadline, a written objection to the Settlement.

2.      A potential Class Member who does not file and serve a written objection in the manner and by the deadline specified above will be deemed to have waived any objection and will be foreclosed from making any objections to the Settlement (whether by appeal or otherwise).

**D.      Election Not to Participate in Settlement**

1.      The potential Class Members will have forty-five (45) days after the date on which the Settlement Administrator mails the Notice Materials (including Class Notice and Claim Form) to submit to the Settlement Administrator a written request not to participate in the Settlement.

2.      The proposed Preliminary Approval Order will provide, and the Class Notice will instruct potential Class Members, that to be valid, a written request not to participate in the Settlement must include the potential Class Member's name and signature and recite the following language:

> "I understand that, by this request to be excluded from the monetary settlement in this case, I am foregoing all monetary benefits from this Settlement and will receive no money from this Settlement. I understand that I may bring a separate legal action seeking damages, but might receive nothing or less than what I would have received if I had filed a claim under the class monetary settlement procedure in this case."

3.    A written request not to participate in the Settlement will be deemed timely submitted to the Settlement Administrator if it is (i) mailed to the Settlement Administrator by first-class mail and postmarked by not later than the deadline for submission stated above; or (ii) it is delivered to the Settlement Administrator by the deadline for submission stated above, whether by mail, facsimile transmission, professional delivery, or personal delivery.

4.    A potential Class Member who does not properly and timely submit a request not to participate in the Settlement in the manner and by the deadline specified above will automatically become a Class Member and be bound by all terms and conditions of the Settlement, including its release of claims, if the Settlement is approved by the Court, and be bound by the Final Approval Order, regardless of whether he or she has objected to the Settlement or submitted a completed Claim Form.

5.    A potential Class Member who properly and timely submits a request not to participate in the Settlement will not be bound by the Settlement, and will remain free to contest any claim brought by the Plaintiffs that would have been barred by the Settlement, and nothing in this Settlement will constitute or be construed as a waiver of any defense NUMMI has or could assert against such a claim, including a demand that such a claim be arbitrated.

6.    No named Plaintiff may elect not to participate in the Settlement.

**E.    Reminder of Deadline; Untimely Submissions**

1.    Twenty-five (25) days after the Settlement Administrator mails the Notice Materials (including Class Notice and Claim Form) to the potential Class Members, the Settlement Administrator will mail a reminder card to all potential Class Members who have not submitted a completed Claim Form or valid request not to participate in the Settlement, indicating the applicable deadline for submission of those papers.

2.    No Claim Form or written request not to participate in the Settlement will be honored if submitted late, unless the Class Member shows good cause as determined by the Settlement Administrator.

**F.    Reports and Declaration by Settlement Administrator**

1.     By not later than ten (10) days after expiration of the 45-day deadline for submission of written requests not to participate in the Settlement, the Settlement Administrator will submit to Class Counsel and Counsel for NUMMI a report setting forth the persons (identified by name and the last four digits of their Social Security Number) who as of that date have submitted (i) valid requests not to participate in the Settlement, and (ii) invalid requests not to participate in the Settlement (the "Opt-Out Report").  In the event that the Settlement Administrator accepts any request not to participate in the Settlement after the expiration of the 45-day deadline, it will promptly update and distribute an updated Opt-Out Report.

2.     By not later than ten (10) days after expiration of the 60-day deadline for submission of Claim Forms, the Settlement Administrator will submit to Class Counsel and Counsel for NUMMI a report setting forth the persons (identified by name and the last four digits of their Social Security Number) who as of that date have submitted (i) valid Claim Forms and (ii) invalid Claim Forms.

3.     By not later than the date when the Plaintiffs file their motion for final approval of the Settlement, the Settlement Administrator will prepare and submit for filing in support of the motion a declaration attesting to its mailing of the Notice Materials and (indicated by number of Class Members only) its receipt of valid Claim Forms and valid requests not to participate in the Settlement and its inability to deliver the Notice Materials to potential Class Members due to invalid addresses.  Prior to the hearing on the motion for final approval of the settlement, the Settlement Administrator will prepare and submit for filing in support of the motion a supplemental declaration as applicable.

4.     Also by not later than the date when the Plaintiffs file their motion for final approval of the Settlement, the Settlement Administrator will file with the Court true copies of the valid Claim Forms and requests not to participate in the Settlement it has received, except it will first redact from the documents the addresses, telephone numbers, e-mail addresses, the Social Security numbers, and information relating to Compensable Work Days and estimated Settlement Shares.

## VII.    RIGHT TO RESCIND

14

In the event that 40 or more of the potential Class Members submit valid requests not to participate in the Settlement, NUMMI will have the right to rescind the Settlement, and all actions taken in its furtherance will be null and void. NUMMI must exercise this right within fourteen (14) days after the deadline for submitting requests not to participate in the Settlement.

## VIII.   FINAL APPROVAL OF THE SETTLEMENT

A.    Plaintiffs will move the Court for final approval of the Settlement.

B.    At the same time of the motion for final approval, Plaintiffs and Class Counsel may move the Court for an award of Class Representative Payments from the QSF in amounts not to exceed $5,000 per representative for his or her services as a class representative in addition to his or her Settlement Share, and for an award of a Class Counsel Attorneys' Fees and Costs Payment from the QSF in an amount not to exceed 25% of the principal of the Settlement Payment (or $1,162,500) for attorneys' fees and an amount not to exceed $35,000 for costs and expenses. NUMMI will not oppose the motion for Class Representative Payments and a Class Counsel Attorneys' Fees and Costs Payment in these amounts, but will not be required to support the motion.

C.    If the motion for final approval is granted, the Plaintiffs will submit the proposed Final Approval Order for entry by the Court.

## IX.   WAIVER OF RIGHT TO APPEAL

Provided that the Final Approval Order is consistent with the terms and conditions of this Settlement, Plaintiffs, Class Members, Class Counsel, and NUMMI hereby waive any and all rights to appeal from the Final Approval Order, including all rights to any post-judgment proceeding and appellate proceeding, such as a motion to vacate or set aside judgment, a motion for new trial, and any extraordinary writ, and the Final Approval Order therefore will become final and nonappealable at the time it is entered. The waiver does not include any waiver of the right to oppose any appeal, appellate proceedings, or post-judgment proceedings. The waiver does not apply to appeals addressing increase or reduction of the amount to be awarded as the Class Representative Payments or Class Counsel's Attorneys' Fees and Costs Payment.

## X.   CREATION OF THE QUALIFIED SETTLEMENT FUND

A.      NUMMI will cause the Settlement Payment to be wired to the Qualified Settlement Fund (QSF) set up by the Settlement Administrator on the later of the following two dates: September 2, 2008 or the fifth (5th) business day following preliminary approval of this Settlement.  While held in the QSF, the funds in the QSF will accrue interest at the then-current T-bill rate.  The Settlement Payment plus the interest earned shall cover the Class Representative Payments made to Plaintiffs, the Class Counsel Attorneys' Fees and Costs Payment made to Class Counsel, the Claimants' Settlement Shares, and the Settlement Administrator's reasonable fees and expenses in administering the Settlement.  The Settlement Administrator will contract directly with ProBusiness, NUMMI's existing third-party provider of payroll tax information, to obtain the information necessary to calculate the applicable payroll taxes and deductions with NUMMI as the claimants' employer; the Settlement Administrator will calculate the amounts owed to each Claimant and the applicable payroll taxes and deductions; the Settlement Administrator will report that information and transfer the money from the QSF to NUMMI; NUMMI will make the appropriate checks out to each Claimant and pay the applicable payroll taxes to the appropriate agencies (paying its own share of applicable payroll taxes from a separate source of funds); NUMMI will produce the necessary Form 1099s and Form W2s; NUMMI will either mail the checks to the Claimants or give the checks to the Settlement Administrator to do so; and NUMMI will report promptly to the Settlement Administrator which checks are cashed and which are not, prior to the check-cashing reminder dates, so that the Settlement Administrator can follow up with those who do not cash checks.  NUMMI will also report which checks are cashed and which are not after the check cashing deadline to the Settlement Administrator and Class Counsel, pursuant to section XI.C.  Except for the payroll taxes and deductions that will be withheld from the Claimants' checks pursuant to section XI.A.3., each Class Member shall be personally responsible for paying his or her share of taxes applicable to whatever settlement payment(s) they may receive.

B.      There will be no reversion to NUMMI of any portion of the QSF provided that the Final Approval Order becomes Final.

C.      If the Settlement is not granted final approval by the Court, or if the Final Approval Order does not become Final, then all proceeds of the QSF (other than those used to pay the Settlement

Administrator's reasonable fees and expenses in administering the Settlement to that point), including all accrued interest, will be immediately returned to NUMMI.

## XI.    DISTRIBUTION OF THE QUALIFIED SETTLEMENT FUND

A.    After the Final Approval Order becomes Final, the Settlement Administrator will distribute the proceeds of the QSF as follows:

1.    Within ten (10) days after the Final Approval Order becomes Final, the Settlement Administrator will distribute the following payments from the QSF:

a.    To Plaintiffs, the Class Representative Payments as awarded by the Court, for which the Settlement Administrator will issue a Form 1099 to each Plaintiff.

b.    To Class Counsel, the Class Counsel Attorneys' Fees and Costs Payment as awarded by the Court, for which the Settlement Administrator will issue a Form 1099 to Class Counsel.

2.    Within sixty (60) days after the Final Approval Order becomes Final, NUMMI or the Settlement Administrator will distribute to every Claimant his or her Settlement Share, which will be calculated for each Claimant as follows:

a.    The "Net QSF" will equal the proceeds of the QSF at the time of distribution less (i) the Class Representative Payments, (ii) the Class Counsel Attorneys' Fees and Costs Payment, and (iii) the Settlement Administrator's reasonable fees and expenses.

b.    Each Claimant's Settlement Share shall equal his or her pro rata share based on the ratio of the Claimant's total number of Compensable Work Days to the total number of all Claimants' Compensable Work Days.

3.    Because the Settlement Shares include sums in settlement of claims for wages, interest, and penalties, fifty percent (50%) of each Settlement Share is intended to constitute a settlement of a claim for unpaid wages, for which NUMMI will issue a Form W-2 to the Claimant and from which payroll tax withholding and deductions will be taken pursuant to state and federal law; and the remaining fifty percent (50%) of each Settlement Share is intended to

constitute a settlement of claims for interest and penalties, from which no payroll tax

withholding and deductions will be taken and NUMMI will issue a Form 1099 to the Claimant.

B.    By not later than seventy-five (75) days after the checks are mailed to the Claimants for

their Settlement Shares, NUMMI will (i) notify Class Counsel and the Settlement Administrator of any

Claimants who have not cashed their Settlement Share checks.  By not later that ninety (90) days after

the checks are mailed to the Claimants, the Settlement Administrator will contact either by telephone or

letter each Claimant who has not cashed his or her Settlement Share checks and remind him or her to do

so before the six-month deadline.  The Settlement Administrator will inform these Claimants that if they

fail to cash their Settlement Share checks by the six-month deadline, they will not receive any money

under the Settlement, and their Settlement Share proceeds represented by the check will be re-distributed

among the Claimants who have cashed their checks. By not later than one hundred and fifty (150) days

after the checks are mailed to every Claimant for his or her Settlement Share, the Settlement

Administrator will again contact those Claimants who have not cashed their checks with the same

reminder and information, NUMMI having provided a report to Class Counsel and the Settlement

Administrator regarding which checks are still outstanding no less than fifteen days prior to that

deadline.

C.    If any Claimant who submitted a timely and valid Claim Form does not cash the check(s)

for his or her Settlement Share within six (6) months after issuance, ten (10) business days after the

check-cashing deadline NUMMI will report that information to Class Counsel and the Settlement

Administrator and distribute the proceeds represented by the uncashed check(s) (the "Remainder") as

follows:

1.    If the Remainder equals $30,000 or more, NUMMI will distribute new checks to

all Claimants who cashed their Settlement Share checks in amounts proportionate to their

respective Settlement Shares, as calculated by the Settlement Administrator.

2.    If the Remainder is less than $30,000, it will be donated in the name of the

"*Martin v. NUMMI*" Settlement Fund to a charity or charities to be agreed upon by the Parties or

selected by the Court.

D.      It is the intention of the Parties and by this Settlement the effect that unless the Claimants cash their Settlement Share checks within the six-month period provided for doing so, they do not hold any property right to or interest in the funds represented by the checks, and therefore California's Unclaimed Property Law, Cal. Code Civ. Proc. § 1500 *et seq.*, and any other comparable laws in the other jurisdictions encompassed by this Settlement, do not apply to checks not cashed within the six month period and the funds represented by those checks will not escheat to the applicable jurisdiction.

## XII.    RELEASE OF CLAIMS

A.      **Release of Claims:**  In consideration of his or her eligibility for a Settlement Share, as of the date the Final Approval Order is entered by the Court, each and every Class Member, on behalf of themselves and their heirs and assigns, hereby release NUMMI and its former and current parents, subsidiaries, and affiliated corporations, its officers, directors, employees, partners, shareholders, and agents, and any other insurers, successors, assigns, and legal representatives (the "NUMMI Parties"), from any claims that were brought, or could have been brought, arising out of the facts alleged in the Plaintiffs' Complaint in this action involving the donning and doffing of cleanroom coveralls and other equipment including, but not limited to, spray booth gear, in the NUMMI truck paint department, passenger paint department, paint side of the plastics department, and body shop department ELPO and repair teams, and while Class Members were employed in a Covered Position during the Covered Period and between the Covered Period and the date the Final Approval Order is entered by the Court (the "Released Claims").  The Released Claims include, but are not limited to, claims for failure to pay overtime premiums as required by FLSA, 29 U.S.C. §201, *et seq.*, failure to pay overtime premiums as required by California Labor Code §§510, 1194, and 1198, and California Wage Order No. 1; failure to pay minimum wages as required by Cal. Labor Code §§1194, 1194.2, and 1197, and Cal. Wage Order No. 1; failure to comply with record keeping requirements as required by Cal. Labor Code §226; failure to pay wages due at time of termination as required by Cal. Labor Code §§ 201 and 203; engagement in unfair and unlawful business practices in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq*; and any and all penalties established by the California Private Attorney General Act (PAGA) for any of the claims described in this paragraph.

1      **B.**    **Waiver of California Civil Code Section 1542:** With respect to the subject matter of

2  their respective Released Claims, Class Members expressly waive and relinquish the provisions, rights

3  and benefits of section 1542 of the California Civil Code and any analogous law, statute, or rule.

4  Section 1542 states:

5      A general release does not extend to claims which the creditor does not know or suspect
    to exist in his or her favor at the time of executing the release, which if known by him or

6      her must have materially affected his or her settlement with the debtor.

7  **XIII.   CONFIDENTIALITY PRECEDING MOTION FOR PRELIMINARY APPROVAL**

8      Except for disclosures authorized by NUMMI or necessary to prepare the motion for preliminary

9  approval, the terms of this Settlement shall remain confidential until they are presented to the District

10  Court in connection with the motion for preliminary approval.

11  **XIV.   MUTUAL FULL COOPERATION**

12      The Parties will fully cooperate with each other and use their best efforts, including all efforts

13  contemplated by this Settlement and any other efforts that may become necessary or ordered by the

14  Court, or otherwise, to accomplish the terms of this Settlement, including but not limited to, executing of

15  such documents and taking such other action as may reasonably be necessary to obtain preliminary and

16  final approval of this Settlement and to implement its terms.

17  **XV.   NO PRIOR ASSIGNMENTS**

18      The Parties represent, covenant, and warrant that they have not directly or indirectly, assigned,

19  transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any

20  portion of any claims, causes of action, demands, rights, and liabilities of every nature and description

21  released under this Settlement.

22  **XVI.   NOTICES**

23      Unless otherwise specifically provided by this Settlement, all notices, demands or other

24  communications given under this Settlement will be in writing and be deemed to have been duly given

25  as of the third business day after mailing by United States registered or certified mail, return-receipt

26  requested, addressed as follows:

27      **To Plaintiffs and the Class:**
    JAMES M. FINBERG
    ALTSHULER BERZON LLP

28      177 Post Street, Suite 300

San Francisco, California 94108

**To NUMMI:**
MARLENE S. MURACO (SBN 154240)
LITTLER MENDELSON
A Professional Corporation
50 West San Fernando Street, 14th Floor
San Jose, CA 95113.2303

## XVII.  CONSTRUCTION

This Settlement is the result of lengthy, arms-length negotiations between the Parties.  This Settlement will not be construed in favor of or against any Party by reason of the extent to which any Party or their or its counsel participated in the drafting of this Settlement.

## XVIII. CAPTIONS AND INTERPRETATIONS

Paragraph and section titles, headings, or captions contained in this Settlement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any of its provisions.  Each term of this Settlement is contractual and not merely a recital, except for those denominated as recitals in section II.

## XIX.  MODIFICATION

This Settlement may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court.  This Settlement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties.

## XX.  APPLICABLE LAW

All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the laws of the State of California, without giving effect to any conflict of law or choice of law principles.

## XXI.  INTEGRATION CLAUSE

This Settlement and its exhibits constitute the entire agreement between the Parties relating to the Settlement and transactions contemplated by the Settlement.  All prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or a Party's counsel, are merged into this Settlement.  No rights under this Settlement may be waived except in writing.

## XXII.  BINDING ON ASSIGNS

This Settlement will be binding upon and will inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

## XXIII. COUNTERPARTS

This Settlement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart will be deemed an original, and, when taken together with other signed counterparts, will constitute one Settlement, which will be binding upon and effective as to all Parties, subject to court approval.

## XXIV. CLASS MEMBERS BOUND BY SETTLEMENT

Because the Class Members are so numerous, it is impossible or impractical to have each Class Member execute this Settlement.  The Class Notice will inform all Class Members of the binding nature of the release of Class Members' Released Claims and it will have the same force and effect as if this Settlement were executed by each Class Member.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

## XXV. PARTIES' AUTHORITY TO SIGN

The signatories to this Settlement hereby represent that they are fully authorized to enter into this Settlement on behalf of themselves or their respective principals.

### EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this document to evidence their acceptance of and agreement to the Settlement.

Dated: June ___, 2008.

> JAMES M. FINBERG
> EVE H. CERVANTES
> LINDA LYE
> PEDER THOREEN
> JENNIFER SUNG
> ALTSHULER BERZON LLP
>
> By: _____
> James M. Finberg
> Attorneys for Plaintiffs David Martin, *et al.*

Dated: June ___, 2008.

> NEW UNITED MOTOR MANUFACTURING, INC.
>
> By: _____
> Kelley McKenzie
> General Counsel

Dated: June ___, 2008.

> MARLENE S. MURACO
> ERICA H. KELLEY
> LITTLER MENDELSON
>
> By: _____
> Marlene S. Muraco
> Attorneys for Defendant
> New United Motor Manufacturing, Inc.