JAMES M. FINBERG, Bar No. 114850
EVE H. CERVANTEZ, Bar No. 164709
LINDA LYE, Bar No. 215584
PEDER THOREEN, Bar No. 217081
JENNIFER SUNG, Bar No. 254741
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415-421-7151
Facsimile: 415-362-8064
E-mail: jfinberg@altber.com

Attorneys for Plaintiffs
DAVID MARTIN, PERRY DEAN, DONALD ALEXANDER,
ANTHONY SILVA, and the proposed Plaintiff Class

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MARTIN, PERRY DEAN, DONALD ALEXANDER, and ANTHONY SILVA, on behalf of themselves and a class of those similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>NEW UNITED MOTOR MANUFACTURING, INC.<br><br>    Defendant. | Case No. C-07-3887-PJH<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR FINAL CERTIFICATION OF SETTLEMETN CLASSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  October 29, 2008<br>Time:  9:00 a.m.<br>Courtroom: 3<br>Judge:  Hon. Phyllis Hamilton |

Case No. C-07-3887-PJH

**MOTION FOR FINAL APPROVAL**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 29, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 3 of this Court, located at 450 Golden Gate Avenue, San Francisco, CA, plaintiffs will, and hereby do, move for orders granting final approval of the parties' class action settlement, and finally certifying the proposed settlement classes.

Plaintiffs' Motion is based on this Notice, and the accompanying Memorandum of Points and Authorities, the Declaration of James M. Finberg in Support of (1) Motion for Final Approval of Settlement; (2) Motion for Service Payments; and (3) Application for Award of Attorneys' Fees and Reimbursement of Expenses ("Finberg Decl."), the Declaration of Jennifer M. Keough Regarding Notice and Settlement Administration ("Keough Decl."), and the Proposed Settlement Agreement (Docket. No. 32, Exh. 1), all other pleadings and papers on file in this action, and any oral argument the Court permits.

Dated: September 24, 2008

By: ___/s/ James M. Finberg___
James M. Finberg

JAMES M. FINBERG, Bar No. 114850
EVE H. CERVANTEZ, Bar No. 164709
LINDA LYE, Bar No. 215584
PEDER THOREEN, Bar No. 217081
JENNIFER SUNG, Bar No. 254741
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415-421-7151
Facsimile: 415-362-8064
E-mail: jfinberg@altber.com

Attorneys' for Plaintiffs

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ...................................................................................................... 1

    I.    THE TERMS OF THE SETTLEMENT ARE FAIR, REASONABLE, AND ADEQUATE .................................................................................................................. 1

    II.   CLASS COUNSEL WERE FULLY INFORMED WHEN THE SETTLEMENT WAS NEGOTIATED ...................................................................................................... 3

    III.  THE SETTLEMETN WAS NEGOTIATED AT ARMS LENGTH; SETTLEMETN NEGOTIATIONS WERE SUPERVISED BY MAGISTRATE JUDGE INFANTE ......... 6

ARGUMENT ................................................................................................................................. 6

    I.    THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT .......... 7

        A.    The Settlement Provides Exceptional Relief to the Class ..................................... 7

        B.    The Reaction of the Class Supports Approval of the Settlement ........................... 8

        C.    The Litigation Involved Substantial Potential Risk ................................................ 8

        D.    The Parties Conducted Extensive Investigation and Analysis and the Settlement Was Reached Through Arms' Length Negotiations ............................ 9

        E.    The Recommendations of Experienced Counsel Favor Approval of the Settlement ............................................................................................................... 9

    II.   THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION ............................ 9

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Boyd v. Bechtel Corp.*,
    485 F.Supp. 610 (N.D. Cal. 1979).............................................................................7, 9

*Carson v. American Brands, Inc.*, 450 U.S. 79 (1981)..........................................................................................6, 7

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)....................................................................................6

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980)....................................................................................7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998)...........................................................................7, 8, 9

*Offices for Justice v. Civil Serv. Commission*,
    688 F.2d 615 (9th Cir. 1982).................................................................................6, 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003).....................................................................................7

### FEDERAL STATUTES

Fair Labor Standards Act,
    29 U.S.C. §201, *et seq* ...........................................................................................2

### FEDERAL RULES

Federal Rule of Civil Procedure 23................................................................................1, 7

### UNPUBLISHED FEDERAL DECISIONS

Martin et al v. NUMMI,
    Case No. 07-3887-PJH Preliminary Approval Order (Dkt. No. 32) ................................8

### STATE STATUTES

Cal. Civil Code § 1542...................................................................................................3, 4

Cal. Labor Code §201 ...................................................................................................2, 3

Cal. Labor Code §226 ......................................................................................................2

Cal. Labor Code §§510 ....................................................................................................2

Cal. Labor Code §§1194, 1194.2 .....................................................................................2

Cal. Unfair Competition Law, Cal. Bus. & Prof. Code §17200 *et seq* .............................*passim*

**STATE WAGE ORDERS**

Cal. Wage Order No. 1 .................................................................................................................2

# MEMORANDUM IN SUPPORT OF MOTION

## INTRODUCTION

The parties have agreed to settle the claims in this action for $4,650,000, plus interest, plus the employer's share of payroll taxes on amounts treated as wages (Docket No. 32, Ex. 1).  The parties' settlement easily satisfies the "fair, reasonable, and adequate" standard for final approval. *See* Federal Rule of Civil Procedure 23(e).

The Decree provides exceptional relief for class members.  The amount obtained is materially higher than NUMMI's estimate of the back pay that would be owed if the class prevailed on liability and the trier of fact accepted NUMMI's estimate of the time spent donning and doffing personal protective equipment.  The settlement also provides Class Members a recovery now, without the risks and delays attendant with further litigation.

Class members have responded favorably to the settlement.  Class notice was mailed to 1,173 class members on August 25, 2008. (Keough Decl., ¶ 4.)  As of September 21, 2008, the claims administrator had already received 494 distinct, valid claim forms, even though the deadline for submitting claim forms is not until October 24, 2008. (*Id.* at ¶ 8.)  Only one class member has opted out (*id.* ¶ 10), and no class member has submitted an objection (*id.* ¶ 11).[1]

Class counsel, who are experienced in litigating employment class action cases, and who were thoroughly familiar with the law and facts of this case at the time the settlement was negotiated, believe that this proposed settlement is in the best interest of the class.

## FACTUAL BACKGROUND

I.   THE TERMS OF THE SETTLEMENT ARE FAIR, REALSONABLE, AND ADEQUATE.

Pursuant to the settlement, on September 2, 2008, NUMMI deposited the sum of $4,650,000 into an interest-bearing account set up by the claims administrator for the benefit of the plaintiff class. (Dkt No. 32, Ex. 1, Section X; Keough Decl. ¶ 12.)  Under the settlement, no portion of that money will revert to NUMMI. (Settlement Agreement at Section X.B)  NUMMI will also pay the employers' share of applicable payroll taxes on amounts treated as wages. (*Id.* at Section X.A.)

---

[1] The deadline for postmarking objections and opt outs is October 9, 2008.  Plaintiffs will address any objections received after October 9, 2008 in a reply brief.

1                                                                                                  Case No. C-07-3887-PJH

**MOTION FOR FINAL APPROVAL**

After payment of such attorneys' fees and costs and expenses and payments as are awarded by the Court, and reasonable costs of claims administration, the entire balance of the Settlement Fund, plus accrued interest, will be paid to class members who submit timely claims. (*Id.* at Section XI.) The net settlement fund will be allocated among claimants in proportion to days worked in class jobs. (*Id.* at Section XI.A.2.)

In exchange for these payments, Class Members will release claims arising out of the facts alleged in this case:

    A.    **Release of Claims:** In consideration of his or her eligibility for a Settlement Share, as of the date the Final Approval Order is entered by the Court, each and every Class Member, on behalf of themselves and their heirs and assigns, hereby release NUMMI and its former and current parents, subsidiaries, and affiliated corporations, its officers, directors, employees, partners, shareholders, and agents, and any other insurers, successors, assigns, and legal representatives (the "NUMMI Parties"), from any claims that were brought, or could have been brought, arising out of the facts alleged in the Plaintiffs' Complaint in this action involving the donning and doffing of cleanroom coveralls and other equipment including, but not limited to, spray booth gear, in the NUMMI truck paint department, passenger paint department, paint side of the plastics department, and body shop department ELPO and repair teams, and while Class Members were employed in a Covered Position during the Covered Period and between the Covered Period and the date the Final Approval Order is entered by the Court (the "Released Claims"). The Released Claims include, but are not limited to, claims for failure to pay overtime premiums as required by FLSA, 29 U.S.C. § 201, *et seq.*, failure to pay overtime premiums as required by California Labor Code §§ 510, 1194, and 1198, and California Wage Order No. 1; failure to pay minimum wages as required by Cal. Labor Code §§ 1194, 1194.2, and 1197, and Cal. Wage Order No. 1; failure to comply with record keeping requirements as required by Cal. Labor Code § 226; failure to pay wages due at time of

termination as required by Cal. Labor Code §§ 201 and 203; engagement in unfair and unlawful business practices in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; and any and all penalties established by the California Private Attorney General Act (PAGA) for any of the claims described in this paragraph.

  B. **Waiver of California Civil Code Section 1542:** With respect to the subject matter of their respective Released Claims, Class Members expressly waive and relinquish the provisions, rights and benefits of section 1542 of the California Civil Code and any analogous law, statute, or rule.  Section 1542 states:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

(Dkt No. 32, Ex. 1, Section XII.)

  If one were to use NUMMI's estimate of the amount of time taken to don and doff the personal protective equipment at issue, the amount of back pay owed would only be $2.7 million, even if the class prevailed at trial on plaintiffs' claim that NUMMI was obligated to pay for time spent donning and doffing during the class period.  (Finberg Decl. ¶ 22.)  The Settlement Fund is a materially larger amount.  Accordingly, the settlement reflects defendant's risk that plaintiffs would not only prevail on liability for back pay at trial, but might persuade the trier of fact that the actual time spent donning and doffing was higher than NUMMI's estimation or establish that they were entitled to liquidated damages or statutory penalties.  (*Id.*)

## II. CLASS COUNSEL WERE FULLY INFORMED WHEN THE SETTLEMENT WAS NEGOTIATED.

  Class Counsel engaged in extensive fact-gathering, motion practice, and informal and formal discovery before agreeing to the terms of the proposed settlement.  Before and during the formal litigation of this action, class counsel conducted a thorough investigation into the merits of the

potential claims and defenses.  (Finberg Decl. ¶¶ 12-23.)

During the pre-filing stage, Class Counsel interviewed a number of the defendant's maintenance and production workers in the paint departments.  Those persons provided us with information regarding the protective gear NUMMI required them to wear, their donning and doffing routines, their schedules and the overtime hours they worked, their compensation, their workplace conditions, their job duties, the affected departments and positions, and related NUMMI policies and practices.  (*Id.* ¶ 13.)

Based on Class Counsel's pre-filing investigation, Class Counsel prepared and filed a complaint on July 30, 2007, alleging violations of the FLSA, the wage and hour laws of California, and the Unfair Competition Law, California Business and Professions Code section 17200 *et seq*.

Prior to mediation, Class Counsel conducted additional interviews of potential class members and witnesses who had contacted us and/or signed consent-to-join forms.  As a result of these interviews, Class Counsel received approximately twenty-one signed declarations from NUMMI employees that described in detail their NUMMI employment histories, work schedules, protective gear requirements, donning and doffing routines, and overtime hours worked, as well as relevant NUMMI policies and practices. Class Counsel also collected time studies (in which Class Members measured how many minutes they spent donning and doffing off-the-clock on a given work day), photographs, and other corroborating documents from Class Members.  (*Id.* ¶ 19.)

Class Counsel also conducted extensive formal discovery, which included interrogatories, requests for admission, requests for production of documents, and depositions.  Class Counsel served NUMMI with a first set of interrogatories in November 2007.  Class Counsel served additional sets of interrogatories, as well as requests for admission, in March 2008.  The interrogatories and requests for admission addressed a variety of factual issues, including class size, NUMMI's protective gear requirements, and NUMMI's donning and doffing compensation policies and practices.  NUMMI's responses established many key facts, including the following: NUMMI requires Class Members to wear antistatic coveralls and other gear; NUMMI requires Class Members to don and doff the coveralls on NUMMI's premises; and NUMMI does not record or compensate Class Members for time spent donning and doffing coveralls and other gear prior to or

after their scheduled shifts. (*Id.* ¶¶ 14-15.)

Class Counsel also served NUMMI with multiple sets of requests for production of documents, in November 2007 and March 2008. NUMMI produced, and we reviewed, thousands of pages of documents. (*Id.* ¶ 16.) These documents included NUMMI's employee manuals and training materials regarding required protective gear; Material Safety Data Sheets describing workplace health and safety hazards to which Class Members are exposed; notices regarding its donning and doffing policies; personnel records; and communications by Class Members to management requesting compensation for donning and doffing time. (*Id.* ¶)

NUMMI also produced an electronic database containing payroll data for the proposed class. These data included identifying information, dates of employment, department and group codes, wage rates, hours reported, and other fields of data. Class Counsel analyzed these data, with the assistance of a statistical expert, to estimate the proposed class's damages. (*Id.* ¶ 17.)

Class Counsel served Defendant with a Request for Entry Upon Property for Inspection and a Rule 30(b)(6) Deposition Notice on October 31, 2007. NUMMI designated its truck paint and passenger paint department managers as the persons most knowledgeable for the majority of key topics, and we examined the corporate designees on the following: NUMMI's donning and doffing policies, protective gear requirements, manufacturing processes, scheduling and compensation policies; and organizational structure, and the physical layout of the NUMMI plant. Class Counsel also examined the designees regarding their job responsibilities, their roles in setting and enforcing the relevant policies, and the foundations for their responses. (*Id.* ¶ 18.)

Extensive analyses of these declarations, interrogatory responses, admissions, documents, payroll data, and depositions enabled Class Counsel to assess the strengths and weaknesses of the factual case by the time of the mediation sessions. (*Id.* ¶ 19.)

In addition to the legal analyses Class Counsel conducted prior to filing the complaint, Class Counsel performed a comprehensive legal analysis prior to the May 21, 2008 mediation session. By the time of the mediation, Class Counsel were fully informed about the strengths and weaknesses of the case. (*Id.* ¶ 20.)

### III. THE SETTLEMENT WAS NEGOTIATED AT ARMS LENGTH; SETTLEMENT NEGOTIATIONS WERE SURPERVISED BY MAGISTRATE JUDGE INFANTE.

The proposed settlement was negotiated in good faith and at arms' length. The settlement negotiations were supervised by the Hon. Edward Infante (ret.), who presided over a full day mediation session. Before the mediation, the parties submitted mediation briefs and supplemental exhibits. During the mediation, the parties vigorously pressed their positions. (Finberg Decl. ¶¶ 21-22.)

The parties reached an agreement in principle, and reduced this agreement to a signed memorandum of understanding, at the mediation. After the mediation, the parties continued their negotiations, exchanging extensive iterations of comments and edits to the proposed settlement agreement, involving every material term. These negotiations culminated in the signing of a Joint Stipulation of Settlement and Release on June 25, 2008. (Dkt No. 32, Ex. 1.) The settlement creates a $4.65 million, non-reversionary common fund on behalf of approximately 1,173 NUMMI employees.

Assuming 50% of all Class Members submit valid claim forms, the anticipated recovery per class member is, on average, net of attorneys' fees and costs, more than $6,000. (*Id.* ¶ 22.)

The proposed settlement is the non-collusive result of extensive factual and legal analysis and protracted arms' length negotiations between experienced and well-informed counsel under the supervision of an experienced mediator. (*Id.* ¶¶ 21-23.)

### ARGUMENT

The Ninth Circuit has recognized a strong policy favoring voluntary settlement of complex class actions. "[V]oluntary conciliation and settlement are the preferred means of dispute resolution." *Offices for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). This is "especially true in complex class action" cases, which lend themselves to compromise because of the difficulties of proof, uncertainty of outcome, and length and complexity of litigation. *Id. See also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned.").

Public policy also favors the settlement of Title VII cases. In *Carson v. American Brands,*

6. Case No. C-07-3887-PJH

**MOTION FOR FINAL APPROVAL**

*Inc.*, 450 U.S. 79 (1981), the Supreme Court explained that "in enacting Title VII, Congress expressed a strong preference for encouraging voluntary settlement of employment discrimination claims." *Id.* at 88 n.14; *see also Officers for Justice*, 688 F.2d at 625. This Court has reached the same conclusion. *See Ellis v. Naval Air Rework Facility*, 87 F.R>D. 15, 18 (N.D. Cal. 1980) ("[S]ettlement is favored in resolving Title VII litigation.").

Federal Rule of Civil Procedure 23(e) requires that a class action settlement be "fair, adequate, and reasonable" in order to merit approval. The Ninth Circuit has identified a non-exhaustive list of factors to guide the final approval inquiry, including (1) the amount offered in settlement, (2) the reaction of the class to the proposed settlement, (3) the strength of the plaintiffs' case balanced against the "risk, expense, complexity, and likely duration of further litigation" and the "risk of maintaining class action status throughout the trial," (4) the "extent of discovery completed" and the "stage of the proceedings," and (5) the informed views of experienced counsel. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). With respect to the last factor, the "recommendations of plaintiffs' counsel should be given a presumption of reasonableness," particularly when counsel has significant experience litigating similar cases. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis*, 87 F.R.D. at 18 ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *see also Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.").

I. **THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.**

   A. **The Settlement Provides Exceptional Relief to the Class**

The proposed settlement was negotiated in good faith and at arms' length. The parties

7. Case No. C-07-3887-PJH

**MOTION FOR FINAL APPROVAL**

vigorously pressed their positions throughout. The parties reached an agreement in principle, and reduced this agreement to a signed memorandum of understanding, at the mediation. After that, the parties continued their negotiations, exchanging extensive iterations of comments and edits to the proposed settlement agreement, involving every material term. These negotiations culminated in the signing of a Joint Stipulation of Settlement and Release on June 25, 2008. (Dkt No 32, Ex. 1.) The settlement creates a $4.65 million, non-reversionary common fund on behalf of 1,173 NUMMI employees. If one were to use NUMMI's estimate of the number of minutes class members spent donning and doffing per work day during the class period, the total amount of back wages owed to the class would be approximately $2.7 million. The settlement is for substantially more than that. Accordingly, the settlement amount takes into account Defendant's risk that Plaintiffs not only would prevail on liability for back pay, but also would prove that donning and doffing takes more time than NUMMI estimates or that Plaintiffs would prevail in obtaining additional amounts, such as liquidated damages and statutory penalties. Assuming 50% Class Members submit valid claim forms, the anticipated recovery per class member is, net of attorneys' fees and costs, on average, more than $6,000 per class member.

    **B.    The Reaction of the Class Supports Approval of the Settlement.**

Class notice and claim forms were sent to 1,173 class members and potential class members on August 25, 2008. *See* Decl. of Jennifer Keough. Objections and opt-outs are due on October 9, 2008 and class member claims must be postmarked by October 24, 2008. Preliminary Approval Order (Dkt. No. 32 at pp. 7-8). As of September 21, 2008, the claims administrator had already received 494 distinct, valid claim forms. (Keough Decl. ¶ 8.) Only one class member has submitted an opt-out request. (*Id.* ¶ 10.) No class members have submitted objections. (*Id.* ¶ 11.)[2] This overwhelming class member support for the settlement strongly favors final approval.

    **C.    The Litigation Involved Substantial Potential Risks.**

The "risk, expense, complexity, and likely duration of further litigation" are factors to be considered in assessing a proposed settlement. *Hanlon*, 150 F.3d at 1026. NUMMI asserted a number of defenses, including pre-emption. NUMMI also contested the amount of time it takes to

---

[2] The deadline for objections and opt outs is October 9, 2008.

don and doff the items worn. NUMMI was planning on moving for summary judgment. NUMMI would have appealed any trial verdict in favor of the class. All of these complex proceedings would be expensive and would result in significant delay before any potential recovery.

### D. The Parties Conducted Extensive Investigation and Analysis and the Settlement Was Reached through Arms' Length Negotiations.

As described above, Class Counsel engaged in extensive fact-gathering, motion practice, and informal and formal discovery (including document requests, interrogatories, and requests for admissions and depositions) before negotiating to the terms of the proposed settlement. By the time of the mediation, Class Counsel was fully informed about the strengths and weaknesses of the case.

The proposed settlement was negotiated in good faith and at arms' length, supervised by the Hon. Edward Infante (Ret.). The parties vigorously pressed their positions throughout. The parties reached an agreement in principle, and reduced this agreement to a signed memorandum of understanding, at the mediation. After that, the parties continued their negotiations, exchanging extensive iterations of comments and edits to the proposed settlement agreement, involving every material term.

### E. The Recommendations of Experienced Counsel Favor Approval of the Settlement.

The judgment of experienced counsel regarding the settlement is entitled to significant weight. *See, e.g., Hanlon*, 150 F. 3d at 1026. The recommendation of experienced class counsel should be given a presumption of reasonableness. *See Boyd*, 485 F. Supp at 622.

Here, Class Counsel, who have extensive experience prosecuting and litigating employment cases and complex class actions, *see* Finberg Decl. ¶¶ 1-11, and who conducted a comprehensive legal and factual investigation into the claims in this case, *see* discussion *supra*, firmly believe that the proposed Consent Decree easily satisfies Rule 23(e)'s requirements and is in the best interest of all class members. (Finberg Decl. ¶ 23.)

## II. THE COURT SHOULD GRANT FINAL CLASS CERTIFICATION.

The Court's July 30, 2008 preliminary approval order conditionally certified a settlement class. No member of the class has objected to class certification or to the appointment of the class

9.   Case No. C-07-3887-PJH

MOTION FOR FINAL APPROVAL

representatives or class counsel.  (Keough Decl. ¶ 11.)

For this reason, in addition to the reasons stated in plaintiffs' motion for preliminary approval and in the Court's July 30, 2008 order, the Court should grant final certification to the injunctive relief and monetary relief classes and should confirm the appointment of class representatives and class counsel.

## CONCLUSION

For the foregoing reasons, the Court should grant final approval to the parties' settlement, and grant final certification to the proposed classes.

Dated: September 24, 2008

By:   /s/ James M. Finberg
           James M. Finberg

JAMES M. FINBERG, Bar No. 114850
EVE H. CERVANTEZ, Bar No. 164709
LINDA LYE, Bar No. 215584
PEDER THOREEN, Bar No. 217081
JENNIFER SUNG, Bar No. 254741
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: 415-421-7151
Facsimile: 415-362-8064
E-mail: jfinberg@altber.com

Attorneys' for Plaintiffs

10.   Case No. C-07-3887-PJH

**MOTION FOR FINAL APPROVAL**